**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: HERFF JONES DATA )<br>BREACH LITIGATION )<br> )<br> )<br>This Document Relates to: )<br>All Actions )<br> ) | Master File No. 1:21-cv-1329-TWP-DLP |

**CONSOLIDATED CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs Justin Ahn, Mariam Barnicle, Kevin Bersch, Leighton Blackwood, Elizabeth Furcinito, Crysta Garner, Angela Garrett, Niculina Odagiu, Andrew Pawelczyk, Connie Quintana, Kristin Walker, and Keisha Windham, individually and on behalf of the Classes defined below of similarly situated persons, allege the following against Herff Jones, LLC ("Herff Jones" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**INTRODUCTION**

1.      Plaintiffs bring this class action against Herff Jones for its failure to properly secure and safeguard Plaintiffs' and other similarly situated Herff Jones customers' credit and debit card and other payment information from hackers.

2.      Herff Jones sells and rents products related to school graduation, including caps, gowns, class rings, and graduation announcements.  Herff Jones accepts payments from customers, like Plaintiffs, online and in person, including via debit and credit card for Herff Jones' products.

3.      In 2021, hackers gained access to Herff Jones' payment card environment and payment systems (the "Data Breach"). The Data Breach included, at a minimum, information

1

sufficient to make fraudulent transactions on the payment cards and accounts of Plaintiffs and similarly situated Herff Jones customers ("Class Members").

4.      The Data Breach led to a flurry of fraudulent and unauthorized purchases on Herff Jones' customers credit and debit cards. Beginning at least as early as May 5, 2021, graduating college seniors on Reddit began reporting that they had incurred fraudulent credit and debit card charges because of renting graduation caps and gowns from Herff Jones.

5.      Thereafter, on or around May 11, 2021, news organizations started reporting about the Data Breach of customers' personally identifiable information ("PII"), which is believed to include, but not be limited to, first and last names, credit and debit card numbers, card expiration dates, security codes, billing addresses, shipping addresses, ACH information, order numbers, and other financial information and payment card data ("PCD"). These news organizations also reported that numerous students alleged that they had incurred fraudulent charges and that some had had their accounts frozen due to the Data Breach.

6.      As of May 12, 2021, Herff Jones confirmed the Data Breach. At least since that date, the company has maintained a banner at or near the top of the homepage of its website titled, "HERFF JONES CYBER SECURITY INCIDENT UPDATE." Clicking on the hyperlinked banner returns a webpage on Herff Jones' website stating, in part, "Herff Jones recently became aware of suspicious activity involving certain customers' payment card information. We promptly launched an investigation and engaged a leading cybersecurity firm to assist in assessing the scope of the incident." Herff Jones also states, "During the course of our investigation, which is ongoing, we identified theft of certain customers' payment information."

7.      Not only did hackers skim Herff Jones' customers' PII, on information and belief, the stolen names and PCD are now for sale on the dark web. That means the Data Breach worked.

2

Hackers accessed and then offered for sale the unencrypted, unredacted, stolen PII and PCD to criminals. Because of Herff Jones' inadequate and negligent data security that led to the Data Breach, customers' PII and PCD is still available on the dark web for criminals to access and abuse. As a result, Herff Jones' customers face a lifetime risk of identity theft.

8.     The number of affected customers has been reported to exceed one million individuals. Herff Jones failed to safeguard Plaintiffs' and other customer's PII and failed to inform them of the data breach until after many customers reported the fraudulent charges on their accounts after purchasing items from Herff Jones.

9.     Plaintiffs and Class Members have suffered injury because of Herff Jones' conduct. The injuries suffered by Plaintiffs and the proposed Classes as a direct result of the Data Breach include, *inter alia*:

    a.  Unauthorized charges on their payment card accounts;

    b.  Theft of their personal and financial information;

    c.  Costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.  Loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

    e.  Costs associated with time spent and the loss of productivity from taking time to address and attempting to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling

and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the data breach;

f.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII and PCD being placed in the hands of criminals and already misused via the sale of Plaintiffs' and the Class Members' information on the Internet black market;

g.  Damages to and diminution in value of their personal and financial information entrusted to Herff Jones for the sole purpose of making purchases from Herff Jones and with the mutual understanding that Herff Jones would safeguard Plaintiffs' and the Class Members' data against theft and not allow access to and misuse of their information by others;

h.  Money paid to Herff Jones during the period of the data breach in that Plaintiffs and the Class Members would not have purchased from Herff Jones had Herff Jones disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' PII and PCD and had Herff Jones provided timely and accurate notice of the data breach; and,

i.  Continued risk to their PII and PCD, which remains in the possession of Herff Jones, and which is subject to further breaches so long as Herff Jones continues to fail to undertake appropriate and adequate measures to protect Plaintiffs' and the Class Members' data in its possession.

10.     Plaintiffs bring this action on behalf of all persons whose PII was compromised due to Herff Jones' failure to: (i) adequately protect its users' PII, (ii) warn users of its inadequate information security practices, and (iii) effectively monitor its websites and e-commerce platforms for security vulnerabilities and incidents. Herff Jones' conduct amounts to negligence and violates federal and state statutes.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. At least one member of the class is a citizen of a state different from Herff Jones.

12.     This Court has personal jurisdiction over Herff Jones because it is a limited liability company organized under the laws of the State of Indiana, because it regularly conducts business in Indiana, has sufficient minimum contacts in Indiana, including its principal place of business, and intentionally avails itself of this jurisdiction by marketing and selling products and services in Indiana.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, including (upon information and belief) the data security incident involving Herff Jones' website. Defendant caused harm to Plaintiffs and the Class Members through its actions in this District.

## PARTIES

14.     Plaintiff Justin Ahn is a citizen of New York residing in Tompkins County. Mr. Ahn used Herff Jones' website on April 13, 2021, to rent a cap and gown for his graduation ceremony, using his debit card issued by J.P. Morgan Chase. On May 13, 2021, he discovered a fraudulent charge on his bank account, which was the result of the Data Breach.

15.     Plaintiff Miriam Barnicle is a citizen of Wisconsin residing in Milwaukee County. On or about April 20, 2021, Ms. Barnicle used her Discover credit card to make a purchase with Herff Jones to pay for the shipping costs associated with the cap and gown for her graduation from Alverno College. On or about May 17, 2021, fraudulent charges were made on Ms. Barnicle's Discover card totaling approximately $112.

16.     Plaintiff Kevin Bersch is a citizen of New Jersey residing in Camden County. At the time of the Data Breach, Mr. Bersch resided in Tippecanoe County, Indiana.  Mr. Bersch used Herff Jones' website on March 27, 2021, to rent a cap and gown for his graduation ceremony, using his credit card issued by TD Bank. On May 24, 2021, he discovered $396.49 in fraudulent charges on his bank account, which were the result of the Data Breach.

17.     Plaintiff Leighton Blackwood is a citizen of New York residing in Broome County. Mr. Blackwood used Herff Jones' website on April 15, 2021, to rent a cap and gown for his graduation ceremony, using his debit card issued by M&T Bank. On May 13, 2021, he discovered $255.31 in fraudulent charges on his bank account, which were the result of the Data Breach.

18.     Plaintiff Elizabeth Furcinito is a citizen of New York, residing in Onondaga County. On March 30, 2021, Ms. Furcinito used her Apple credit card ("Apple Card") to make a purchase with Herff Jones to pay for the shipping costs associated with her cap and gown for her graduation from Syracuse University. On or about May 19, 2021, a fraudulent charge was made on Ms. Furcinito's Apple Card in the amount of $2,995.99.

19.     Plaintiff Crysta Garner is a citizen of California, residing in Los Angeles County. Ms. Garner purchased graduation-related items from Herff Jones using her Mastercard credit card relating to her daughter's upcoming graduation from Mt. San Antonio College. On or about May

8, 2021, Ms. Garner discovered fraudulent purchase activity on her Mastercard credit card, which was the result of the Data Breach.

20.     Plaintiff Angela Garrett is a citizen of Illinois, residing in Cook County. Ms. Garrett made purchases from Herff Jones' website on April 15, 2021, relating to her May 23, 2021, graduation from Harold Washington College. On or about May 9, 2021, she discovered approximately $627.28 in fraudulent charges on her bank account, which were the result of the Data Breach.

21.     Plaintiff Niculina Odagiu is a citizen of Illinois, residing in McHenry County. Ms. Odagiu made a purchase on Herff Jones' website on April 5, 2021, relating to her son's grade school graduation. On or about May 30, 2021, Ms. Odagiu experienced three fraudulent charges to her credit card totaling $970.63 which were the result of the Data Breach.

22.     Plaintiff Andrew Pawelczyk is a citizen of Wisconsin, residing in Kenosha County. At the time of the Data Breach, Mr. Pawelczyk resided in Peoria County, Illinois. Mr. Pawelczyk used Herff Jones' website on April 18, 2021, to rent his graduation regalia for Bradley University in Peoria, Illinois. Between May 9 and May 11, 2021, Mr. Pawelczyk experienced a series of fraudulent charges on his account which were the result of the Data Breach.

23.     Plaintiff Connie Quintana is a citizen of California residing in Ventura County. Ms. Quintana used Herff Jones' website in April 2021 to purchase her graduation wardrobe (e.g., cap and gown) using one of her payment cards. On or about May 13, 2021, she discovered at least three fraudulent charges on her bank account, which were the result of the Data Breach.

24.     Plaintiff Kristin Walker is a citizen of California residing in Los Angeles County. Ms. Walker used Herff Jones' website on March 31, 2021, to rent a cap and gown for her graduation ceremony, using her debit card issued by Bank of America. On May 5, 2021, she

discovered $229.91 in fraudulent charges on her bank account, which were the result of the Data Breach.

25.     Plaintiff Keisha Windham is a citizen of Missouri, residing in St. Louis County. Ms. Windham used her debit card on Herff Jones' website on March 29, 2021, to purchase stationery and to rent graduation regalia for her graduation. On June 20, 2021, she discovered $59.89 in fraudulent charges on her checking account which were a result of the Data Breach.

26.     Defendant Herff Jones, LLC is a domestic limited liability company organized under the laws of the State of Indiana, with a principal place of business at 4625 W. 62nd Street, Indianapolis, IN 46268.

27.     As of December 12, 2019, Defendant has one member of its LLC, which, upon information and belief, is Varsity Brands Holding Co, Inc. Varsity Brands Holding Co, Inc. is an Indiana corporation with its principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas, 75244.

28.     Since 2014, Herff Jones has been a wholly owned subsidiary of Varsity Brands, Holding Co, Inc. Varsity Brands Holding Co, Inc. is an Indiana corporation with its principal place of business at 14460 Varsity Brands Way, Farmers Branch, TX 75244.

29.     Herff Jones advertises and rents or sells goods to customers nationwide through its website as well as through contracted representatives.   Its website can be found at the herffjones.com URL, which is registered to Herff Jones with an Indiana address.[1]   Likewise, a reverse lookup of the IP address associated with that URL, 216.54.145.22, returns a physical location in Indianapolis, Indiana.[2]

---

[1] https://www.godaddy.com/whois/results.aspx?domain=HERFFJONES.COM (last visited July 20, 2021).
[2] https://www.whatismyip.com/216.54.145.22/ (last visited July 20, 2021).

## FACTUAL ALLEGATIONS

### *Background*

30.    Herff Jones is a company that manufactures and sells educational recognition and achievement products and motivational materials. It publicizes that it "started manufacturing class rings, medals, pins and other emblematic jewelry. As the years went by, the company has grown to include yearbooks, graduation announcements, diplomas, caps and gowns, and diploma frames."[3]

31.    Herff Jones maintains production facilities across the United States as well as in Canada and has a network of over 700 independent sales representatives.

### *Herff Jones' Personal Information Collection Policies*

32.    In the ordinary course of doing business with its customers, Herff Jones collects customers' "(i) name; (ii) email address; (iii) age; (iv) postal address; (v) username and password associated with your account; (vi) phone numbers; (vii) measurements for uniform orders; and (viii) demographic information."[4] Additionally, Herff Jones notes that it "may also collect and maintain your billing address, shipping address, product selections, financial information (such as your credit or debit card information or ACH information, applicable card expiration dates and security codes) and your order number."[5] Plaintiffs and the Class Members are regularly required to provide their sensitive, personal and private protected information in order to purchase Herff Jones' products.

33.    Furthermore, Herff Jones provides consumers with a privacy policy that informs them how their PII will be used (the "Privacy Policy"). In its Privacy Policy, Herff Jones promises

---

[3] www.herffjones.com/about/ (last visited May 21, 2021).
[4] https://www.herffjones.com/about/privacy/#info (last visited May 21, 2021).
[5] *Id.*

not to disclose consumers' information without their consent. Herff Jones also promises that it has "implemented administrative, technical, and physical security measures to protect against the loss, misuse and/or alteration of your information."[6]

34.    Relating to California customers, Herff Jones notes that under the California Consumer Privacy Act, it collects:

    a.   identifiers (such as name, address, email address);

    b.   commercial information (such as transaction data);

    c.   financial data (such as credit card information collected by our payment processors on our behalf);

    d.   internet or other network or device activity (such as browsing history or usage information);

    e.   geolocation information (e.g., your approximate location based on IP address, or precise location with your consent for personalized advertising purposes);

    f.   inference data about you (e.g., the additional services we think would be of most interest to you based on your interactions with us);

    g.   legally protected classifications (such as gender and age);

    h.   physical characteristics or description (e.g., measurements for uniform orders); and

    i.   other information that identifies or can be reasonably associated with you.[7]

35.    Plaintiffs and the Class Members reasonably expect that service providers such as Herff Jones will use the utmost care to keep this information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

---

[6] *See* https://www.herffjones.com/about/privacy/#CA ("How we use your information.") (last visited May 21, 2021).
[7] *Id.*

### *The Data Breach*

36.    Despite Herff Jones' representation that it had implemented administrative, technical, and physical security measures, Herff Jones failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiffs' and the Class Members' PII and PCD.

37.    On May 16, 2021, the electronic data security company Bleeping Computer published a report entitled "Herff Jones credit card breach impacts college students across the US."[8]

38.    The report stated that "[g]raduating students from several universities in the U.S. have been reporting fraudulent transactions after using payment cards at popular cap and gown maker Herff Jones."

39.    On information and belief, as a result of the Data Breach, the PII including, but not limited to PCD, of thousands of Herff Jones customers (mainly students), has been exposed to criminals for misuse.

40.    On information and belief, the Data Breach affected students across the U.S. at universities in at least the following states: Indiana (Purdue, Indiana University), Boston, Maryland (Towson University), Illinois (Harold Washington College, Bradley University, University of Illinois), Delaware, Michigan, Wisconsin, Pennsylvania (Lehigh, Misericordia), New York (Cornell, State University), Arizona, North Carolina (Wake Forest), Florida (State University), California (Sonoma State, and Mt. San Antonio College), and Texas (University of Houston).[9]

---

[8] See https://www.bleepingcomputer.com/news/security/herff-jones-credit-card-breach-impacts-college-students-across-the-us/ (last visited May 24, 2021).
[9] *Id.*

41.     According to reports, "Herff Jones was completely unaware of the breach until students started to complain on social media about their fraudulent charges to their payment cards."[10]

42.     The common denominator at that time was that the victims were graduating students that had purchased commencement gear at Herff Jones. According to social media posts, some of the victims had to cancel their payment cards and address the fraudulent charges with their respective banks:



43.     The reports further claimed that "the students complained of fraudulent charges varying from a tens of U.S. dollars to thousands. While most reports mention losses between $80 and $1,200, one student stated that a friend of theirs was charged $4,000."[11]

---

[10] *Id.*
[11] *Id.*

44.     One senior at Cornell University stated that they had to cancel their credit card because it had been stolen and fraudsters tried to charge $3,000 to "asics" and used it on adult content subscription service OnlyFans.[12]

45.     According to one report, "[i]t is unclear when the breach at Herff Jones occurred but some of the earliest transactions date from the beginning of the month. Multiple students said they had purchased graduation items in April."[13]

46.     On information and belief, Herff Jones did not send out notice of the Data Breach to individual victims affected by the Data Breach until significantly after the breach occurred.

47.     Instead, on or about May 12, 2021, in a Cyber Security Incident Update on its website, Herff Jones admitted the following:

> Herff Jones recently became aware of suspicious activity involving certain customers' payment card information. We promptly launched an investigation and engaged a leading cybersecurity firm to assist in assessing the scope of the incident. We have taken steps to mitigate the potential impact and notified law enforcement. Herff Jones is committed to the privacy and security of its customers and we take this responsibility seriously.
>
> During the course of our investigation, which is ongoing, we identified theft of certain customers' payment information.
>
> We sincerely apologize to those impacted by this incident. We are working diligently to identify and notify impacted customers. In the meantime, we have a dedicated customer service team that can be reached by calling 855-535-1795 between 9 a.m. and 9 p.m. EDT Monday through Friday.[14]

48.     Indeed, despite Herff Jones' promises that it: (i) would not disclose consumers' Private Information; and (ii) would protect consumers' PII with adequate security measures, it

---

[12] https://www.reddit.com/r/Purdue/comments/n56ga5/graduating_seniors_look_here_herff_jones_data/gxmhayq/
?utm_source=share&utm_medium=web2x&context=3 (last visited July 7, 2021).
[13] https://www.bleepingcomputer.com/news/security/herff-jones-credit-card-breach-impacts-college-students-
across-the-us/ (last visited July 26, 2021).
[14] https://content.herffjones.com/about/press-releases/herff-jones-cyber-security-incident-update/ (last visited July 26, 2021)

appears that Herff Jones did not even implement basic security measures such as encrypting its payment data, as evidenced by the numerous fraudulent transactions reported by Plaintiffs and other Class Members.

***Flow of Card Transactions***

49.     In a debit or credit card purchase transaction, card data must flow through multiple systems and parties to be processed. Generally, the cardholder presents a credit or debit card to an e-commerce retailer (through an e-commerce website) to pay for merchandise. The card is then "swiped" and information about the card and the purchase is stored in the retailer's computers and then transmitted to the acquirer or processor (i.e., the retailer's bank). The acquirer relays the transaction information to the payment card company, who then sends the information to the issuer (i.e., cardholder's bank). The issuer then notifies the payment card company of its decision to authorize or reject the transaction. See graphic below:[15]

---

[15] Source: "Payments 101: Credit and Debit Card Payments," a white paper by First Data, at: https://www.firstdata.com/downloads/thought-leadership/payments101wp.pdf (last visited Oct. 27, 2020).

14



| 1 | The consumer selects a card for payment. The cardholder data is entered into the merchant's payment system, which could be the point-of-sale (POS) terminal/software or an e-commerce website. |
|---|---|
| 2 | The card data is sent to an acquirer/payment processor, whose job it is to route the data through the payments system for processing. With e-commerce transactions, a "gateway" provider may provide the link from the merchant's website to the acquirer. |
| 3 | The acquirer/processor sends the data to the payment brand (e.g. Visa, MasterCard, American Express, etc.) who forward it to the issuing bank/issuing bank processor |
| 4 | The issuing bank/processor verifies that the card is legitimate, not reported lost or stolen, and that the account has the appropriate amount of credit/funds available to pay for the transaction. |
| 5 | If so, the issuer generates an authorization number and routes this number back to the card brand. With the authorization, the issuing bank agrees to fund the purchase on the consumer's behalf. |
| 6 | The card brand forwards the authorization code back to the acquirer/processor. |
| 7 | The acquirer/processor sends the authorization code back to the merchant. |
| 8 | The merchant concludes the sale with the customer. |

50.     There are two points in the payment process where sensitive cardholder data is at risk of being exposed or stolen: pre-authorization when the merchant has captured a consumer's data and it is waiting to be sent to the acquirer; and post-authorization when cardholder data has been sent back to the merchant with the authorization response from the acquirer, and it is placed into some form of storage in the merchant's servers.

51.     Encryption mitigates security weaknesses that exist when cardholder data has been stored, but not yet authorized, by using algorithmic schemes to transform plain text information into a non-readable format called "ciphertext." By scrambling the payment card data the moment it is "swiped," hackers who steal the data are left with useless, unreadable text in the place of payment card numbers accompanying the cardholder's personal information stored in the retailer's computers.

52.     However, when the data is not encrypted, hackers can target what they refer to as the *fullz*–a term used by criminals to refer to stealing the full primary account number, card holder contact information, credit card number, CVC code, and expiration date. The *fullz* is exactly what appears to have been scraped from Herff Jones' ecommerce platform. Typically, hackers insert virtual credit card skimmers or scrapers (also known as *formjacking*) into a web application (usually the shopping cart), and hackers proceed to scrape credit card information to sell on the dark web.[16]

53.     The financial fraud suffered by Plaintiffs and other Class Members demonstrates that, at the very least, Herff Jones chose not to invest in the technology to encrypt PII and PCD at point-of-sale to make its customers' data more secure; failed to install updates, patches, and malware protection or to install them in a timely manner to protect against a data security breach; and/or failed to provide sufficient control employee credentials and access to computer systems to prevent a security breach and/or theft of PCD.

### *FBI, FTC, NIST Guidelines on Protecting Customer Personal Information*

54.     Recently, the FBI issued a warning to companies about this exact type of fraud.  In the FBI's *Oregon FBI Tech Tuesday: Building a Digital Defense Against E-Skimming*, dated October 22, 2019, the agency stated:

> This warning is specifically targeted to . . . businesses . . . that take credit card payments online. E-skimming occurs when cyber criminals inject malicious code onto a website. The bad actor may have gained access via a phishing attack targeting your employees—or through a vulnerable third-party vendor attached to your company's server.

55.     The FBI gave some stern advice to companies like Herff Jones:

Here's what businesses and agencies can do to protect themselves:
- Update and patch all systems with the latest security software.

---

[16] *Magecart Hits 80 Major eCommerce Sites in Card-Skimming Bonanza*, Threatpost, Aug. 28, 2019, *available at*: https://threatpost.com/magecart-ecommerce-card-skimming-bonanza/147765/(last visited May 24, 2021).

- Anti-virus and anti-malware need to be up-to-date and firewalls strong.
- Change default login credentials on all systems.
- Educate employees about safe cyber practices. Most importantly, do not click on links or unexpected attachments in messages.
- Segregate and segment network systems to limit how easily cyber criminals can move from one to another.

56.     But Herff Jones apparently did not take this advice. Hackers scraped customers' PII off its website and continued to do so until at least May 2021.

57.     Similarly, the Federal Trade Commission ("FTC") has held that the failure to employ reasonable measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA") (codified by 15 U.S.C. § 45).

58.     Under the FTCA, Herff Jones is prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTCA.

59.     Beginning in 2007, the FTC released a set of industry standards related to data security and the data security practices of businesses, called "Protecting Personal Information: A Guide for Businesses" (the "FTC Guide").[17] In 2011, this guidance was updated to include fundamental data security principles for businesses. In addition to the necessity to protect consumer data, the guide established that:

- Businesses should dispose of personal identifiable information that is no longer needed;

---

[17] *See FTC Unveils Practice Suggestions for Businesses on Safeguarding Personal Information*, FEDERAL TRADE COMM'N (Mar. 8, 2007), https://www.ftc.gov/news-events/press-releases/2007/03/ftc-unveils-practical-suggestions-businesses-safeguarding; *see also* Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business, Federal Trade Commission* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal information.pdf (updated FTC Guide) (last visited July 26, 2021).

- Businesses should encrypt personal identifiable information and protected cardholder data stored on computer networks so that it is unreadable even if hackers are able to gain access to the information;
- Businesses should thoroughly understand the types of vulnerabilities on their network (of which malware on a point-of-sale system is one) and how to address said vulnerabilities;
- Businesses should implement protocols necessary to correct security breaches;
- Businesses should install intrusion detection systems to expose security breaches at the moment they occur;
- Businesses should install monitoring mechanisms to watch for massive troves of data being transmitted from their systems; and,
- Businesses should have an emergency plan prepared in response to a breach.

60.    On information and belief, Herff Jones failed to adequately address the foregoing requirements in the FTC Guide.

61.    In 2015, the FTC supplemented the FTC Guide with a publication called "Start with Security" (the "**Supplemented FTC Guide**").[18] This supplement added further requirements for businesses that maintain customer data on their networks:

- Businesses should not keep personal identifiable information and protected cardholder data stored on their networks for any period longer than what is needed for authorization;
- Businesses should use industry-tested methods for data security; and,
- Businesses should be continuously monitoring for suspicious activity on their network.

62.    Again, Herff Jones failed to adequately address these requirements enumerated in the Supplemented FTC Guide.

63.    The FTC Guide is clear that businesses should, among other things: (1) protect the personal customer information they acquire; (2) properly dispose of personal information that is no longer needed; (3) encrypt information stored on computer networks; (4) understand their

---

[18] Fed. Trade Comm'n, Start with Security: A Guide for Business (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited July 26, 2021).

network's vulnerabilities; and (5) implement policies for installing vendor-approved patches to correct security vulnerabilities. The FTC guidance also recommends that businesses: (1) use an intrusion detection system to expose a breach as soon as it occurs; (2) monitor all incoming traffic for activity indicating that someone may be trying to penetrate the system; and (3) watch for large amounts of data being transmitted from the system.[19] Plaintiffs believe that Herff Jones did not follow these recommendations, and as a result exposed hundreds of thousands of consumers to harm.

64.     Furthermore, the FTC has issued orders against businesses for failing to employ reasonable measures to safeguard customer data. The orders provide further public guidance to businesses concerning their data security obligations.

65.     Herff Jones knew or should have known about its obligation to comply with the FTCA, the FTC Guide, the Supplemented FTC Guide, and many other FTC pronouncements regarding data security.

66.     Thus, among other things, Herff Jones' misconduct violated the FTCA and the FTC's data security pronouncements, led to the Data Breach, and resulted directly and proximately in harm to Plaintiffs and the Class Members.

67.     Additionally, the National Institute of Standards and Technology ("NIST") provides basic network security guidance that enumerates steps to take to avoid cybersecurity vulnerabilities.[20] Although use of NIST guidance is voluntary, the guidelines provide valuable insights and best practices to protect network systems and data.

---

[19] *See, e.g.*, *id.*; Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct.2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited on July 26, 2021).

[20] *Framework for Improving Critical Infrastructure Cybersecurity*, Nati'l Inst. OF Standards & Tech. (April 16, 2018), Appendix A, Table 2, *available at* https://nvl pubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04162018.pdf (last visited on July 26, 2021)

68.     NIST guidance includes recommendations for risk assessments, risk management strategies, system access controls, training, data security, network monitoring, breach detection, and mitigation of existing anomalies.[21]

69.     Herff Jones' failure to protect massive amounts of PII and PCD throughout the multi-month breach period belies any assertion that Herff Jones employed proper data security protocols or adhered to the spirit of the NIST guidance.

### *Value of Personally Identifiable Information*

70.     PII is a valuable property right.  Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

71.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark-web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[22] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web; the *fullz* sold for $30 in 2017.[23] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[24]

---

[21] *Id*. at Table 2 pg. 36-43.

[22] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:  https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited May 24, 2021).

[23] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:   https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited May 24, 2021).

[24] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed May 24, 2021).

72.     A study by the Identity Theft Resource Center shows the multitude of harms caused

by fraudulent use of PII:[25]



73.     Plaintiffs and the Class Members have experienced one or more of these harms as

a result of the Data Breach.

74.     Moreover, there may be a time lag between when harm occurs versus when it is

discovered, and between when PII or PCD is stolen and when it is used. According to the U.S.

Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for
> up to a year or more before being used to commit identity theft. Further, once stolen
> data have been sold or posted on the Web, fraudulent use of that information may
> continue for years. As a result, studies that attempt to measure the harm resulting
> from data breaches cannot necessarily rule out all future harm.[26]

---

[25] Source: "*Credit Card and ID Theft Statistics*" by Jason Steele, 10/24/17, https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited Oct. 27, 2020).
[26] "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" by GAO, June 2007, at: https://www.gao.gov/assets/270/262904.html  (last visited May 24, 2021).

75.     Therefore, given the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on its customers as a result of a breach, Herff Jones was, or should have been, fully aware of its responsibilities towards protecting customer PII.

### ***Damage to Plaintiffs and the Class Members Caused by the Data Breach***

76.     Plaintiffs and the Class Members have been damaged because their PII, including PCD, was accessed by hackers in the Data Breach. Plaintiffs and many Class Members have experienced fraudulent transactions on their payment cards and accounts after using the same PII, including PCD, for legitimate purchases from Herff Jones.

77.     It appears that entire batches of stolen payment card information have been dumped on the black market and may continue to be distributed on the black market, meaning Plaintiffs and the Class Members are at an increased risk of fraud for many years into the future.

78.     In or about late June 2021, more than six weeks after initial reports of fraudulent charges began appearing online and after the instant litigations were commenced, Herff Jones began notifying customers that their PII may have been compromised. However, the only thing Herff Jones is doing to remedy the harm caused by its breaches is to offer customers "free credit monitoring."[27]

79.     Credit monitoring alone is insufficient to remedy the harm to Plaintiffs and the Class Members.  Plaintiffs and the Class Members have or will suffer actual injury as a direct result of Herff Jones' Data Breach. As a direct and proximate result of Herff Jones' conduct, Plaintiffs and the Class Members have been placed at an imminent, immediate, and continuing

---

[27] Herff Jones Cyber Security Incident Update (June 15, 2021) *available at* https://content.herffjones.com/about/press-releases/herff-jones-cyber-security-incident-update/; Families being notified following data breach of yearbook, graduation apparel supplier, WBAY.com (June 27, 2021) *available at* https://www.wbay.com/2021/06/27/families-being-notified-following-data-breach-yearbook-graduation-apparel-supplier/ (last visited July 26, 2021).

increased risk of harm from fraud. Plaintiffs and the Class Members now have to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives.

80.     For example, in addition to fraudulent charges and damage to their credit, many victims have spent and/or will spend substantial time and expense relating to:

     a.  Finding fraudulent charges;

     b.  Canceling and reissuing cards;

     c.  Purchasing identity theft prevention products beyond just credit monitoring;

     d.  Addressing their inability to withdraw funds linked to compromised accounts;

     e.  Removing withdrawal and purchase limits on compromised accounts;

     f.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

     g.  Spending time on the phone with or at the financial institution to dispute fraudulent charges;

     h.  Resetting automatic billing instructions; and/or

     i.  Paying late fees and declined payment fees imposed as a result of failed automatic payments.

81.     Plaintiffs and the Class Members may also incur out-of-pocket costs for protective measures such as credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

82.     Plaintiffs and the Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

83.     Plaintiffs and the Class Members were also damaged via benefit-of-the-bargain damages. The implied contractual bargain entered into between Herff Jones and Plaintiffs and the

23

Class Members included Herff Jones' contractual obligation to provide adequate data security, which Herff Jones failed to provide. Thus, Plaintiffs and the Class Members did not get what they paid for, resulting in actual harm.

84.    Plaintiffs and the Class have suffered, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    Trespass, damage to and theft of their personal property including their PII and PCD;

b.    Improper disclosure of their PII and PCD property;

c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by customers' PII and PCD being placed in the hands of criminals and having been already misused via the sale of such information on the Internet black market;

d.    Damages flowing from Herff Jones' untimely and inadequate notification of the data breach;

e.    Loss of privacy suffered as a result of the data breach;

f.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

g.    Ascertainable losses in the form of deprivation of the value of customers' PII for which there is a well-established and quantifiable national and international market; and

h.    The loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money customers were permitted to obtain from their accounts.

85.     The substantial delay in providing notice of the Data Breach deprived Plaintiffs and the Class Members of the ability to promptly mitigate potential adverse consequences resulting from the Data Breach. As a result of Herff Jones' delay in detecting and notifying consumers of the Data Breach, the risk of fraud for Plaintiffs and the Class Members was and has been driven even higher.

86.     Examples of the harms to Herff Jones' customers as a direct and foreseeable consequence of its conduct include the experiences of the representative Plaintiffs, which are described below.

**INDIVIDUAL PLAINTIFFS' EXPERIENCES**

*__Plaintiff Justin Ahn__*

87.     On or about April 13, 2021, Plaintiff Justin Ahn placed an order through Herff Jones to rent his graduation cap and gown.

88.     Plaintiff Ahn used his J.P. Morgan Chase credit card to make the purchase.

89.     On or about May 13, 2021, an unauthorized charge was made on Plaintiff Ahn's credit card.

90.     Plaintiff Ahn did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

91.     Plaintiff Ahn's bank, J.P. Morgan Chase, changed the account number in response to the illegal charges and mailed him a new card, though there was a delay between when he learned his prior card was compromised and could not be used and when he received the new card, which frustrated Plaintiff Ahn as it impeded his ability to make purchases.

92.     Plaintiff Ahn suffered an actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring his accounts for fraud. As a result of the Data

Breach, Plaintiff Ahn had to take time out of his day during final examinations to deal with the fraudulent charges and the account number change.  This was time he otherwise would have spent performing other activities. He also had to use alternative methods of payment until he received his new credit card.

93.     Plaintiff Ahn suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

94.     Knowing that a hacker stole his PII, and that his PII may be available for sale on the dark web, has caused Plaintiff Ahn great concern. He is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff Ahn hesitation about using Herff Jones' services, and reservations about shopping on other online websites.

95.     Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained his PII at no compensation to Plaintiff Ahn whatsoever. That is money lost for him, and money gained for the hackers who could sell his PII on the dark web.

96.     Plaintiff Ahn also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which he would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

97.     Moreover, Plaintiff Ahn suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

98.     Plaintiff Ahn has a continuing interest in ensuring his PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

26

99.     Additionally, Plaintiff Ahn has always taken reasonable precautions to protect his PII.

***Plaintiff Miriam Barnicle***

100.     On or about April 20, 2021, Plaintiff Barnicle used her Discover credit card to make a purchase with Herff Jones for approximately $8.39 to pay for the shipping costs associated with the cap and gown for her graduation from Alverno College.

101.     Following her purchase with Herff Jones, on May 17, 2021, fraudulent charges were made on Plaintiff Barnicle's Discover card. Specifically, a criminal used her card to make seven unauthorized fraudulent charges with Printify totaling approximately $112.

102.     As a result, Plaintiff Barnicle was forced to call Discover to report the fraudulent charges, and she was informed that Discover is conducting an ongoing investigation of the fraud.

103.     Plaintiff Barnicle did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

104.     Instead, Plaintiff Barnicle received an e-mail from Alverno College informing her that students or parents who shopped at Herff Jones may have been exposed to the Data Breach.

105.     Plaintiff Barnicle then called Herff Jones, provided her name and address to an employee of Herff Jones, and was informed by Herff Jones that her identity was compromised. During the call, Herff Jones told her that she should contact her bank, and it would not confirm whether her sensitive information remains at risk. Herff Jones did not do anything to assist her with the impact of the Data Breach.

106.     Before learning that her payment card was impacted by the Data Breach, Plaintiff Barnicle had never experienced fraudulent charges on or identity theft with respect to her Discover card.

107.    As a result of having been victimized by the Data Breach, Plaintiff Barnicle was required to spend a significant amount of time—approximately three hours—addressing the fraud concerns related to her compromised card.

108.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained Plaintiff Barnicle's PII at no compensation to her whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

109.    Plaintiff Barnicle also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

110.    Moreover, Plaintiff Barnicle suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

111.    Plaintiff Barnicle has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

112.    Additionally, Plaintiff Barnicle has always taken reasonable precautions to protect her PII.

***Plaintiff Kevin Bersch***

113.    Plaintiff Bersch placed an order with Herff Jones to rent his cap and gown on or about March 27, 2021.

114.    He used his TD Bank credit card to make the purchase.

115.    From May 5, 2021 to May 20, 2021, a series of 12 unauthorized purchases totaling $396.49 were made on the card.

116.    Plaintiff Bersch contacted TD Bank and it changed the account number in response to the illegal charges and mailed him a new card, though there was a delay between when he learned his prior card was compromised and could not be used and when he received the new card, which frustrated Plaintiff Bersch as it impeded his ability to make purchases.

117.    Plaintiff Bersch did not receive a timely notification from Herff Jones, despite the company knowing about the Data Breach.

118.    Plaintiff Bersch suffered an actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring his accounts for fraud.  As a result of the Data Breach, Plaintiff Bersch had to take time out of his day to deal with the fraudulent charges and the account number change, as well as to change over recurring charges that would otherwise be made on the card.  This was time he otherwise would have spent performing other activities. He also had to use alternative methods of payment until he received the new credit card.

119.    Plaintiff Bersch suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

120.    Knowing that a hacker stole his PII, and that his PII may be available for sale on the dark web, has caused Plaintiff Bersch great concern. He is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff Bersch hesitation about using Herff Jones' services, and reservations about shopping on other online websites.

121.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained his PII at no compensation to Plaintiff Bersch whatsoever. That is money lost for him, and money gained for the hackers – who could sell his PII on the dark web.

122.    Plaintiff Bersch also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which he would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

123.    Moreover, Plaintiff Bersch suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

124.    Plaintiff Bersch has a continuing interest in ensuring his PII, which remains in Herff Jones' possession, is protected and safeguarded from future breaches.

125.    Additionally, Plaintiff Bersch has always taken reasonable precautions to protect his PII.

### *Plaintiff Leighton Blackwood*

126.    Plaintiff Blackwood placed an order with Herff Jones to rent his cap and gown on or about April 15, 2021.

127.    He used his debit card, issued by M&T Bank, to complete the purchases.

128.    On May 11, 2021, two unauthorized purchases totaling $255.31 were made on the card.

129.    Plaintiff Blackwood did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach

130.    M&T Bank changed the account number in response to the illegal charges and mailed him a new card, though there was a delay between when he learned his prior card was compromised and could not be used and when he received the new card, which frustrated Plaintiff Blackwood as it impeded his ability to make purchases.

131.     Plaintiff Blackwood suffered an actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring his accounts for fraud. As a result of the Data Breach, Plaintiff Blackwood had to take time out of his day to deal with the fraudulent charges and the account number change, as well as to change over recurring charges that would otherwise be made on the card.  This was time he otherwise would have spent performing other activities. He also had to use alternative methods of payment until he received their new credit card.

132.     Plaintiff Blackwood suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

133.     Knowing that a hacker stole his PII, and that his PII may be available for sale on the dark web, has caused Plaintiff Blackwood great concern. He is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff Blackwood hesitation about using Herff Jones' services, and reservations about shopping on other online websites.

134.     Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained his PII at no compensation to Plaintiff Blackwood whatsoever. That is money lost for him, and money gained for the hackers – who could sell his PII on the dark web.

135.     Plaintiff Blackwood also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which he would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

136.     Moreover, Plaintiff Blackwood suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

31

137.    Plaintiff Blackwood has a continuing interest in ensuring his PII, which remains in Herff Jones' possession, is protected and safeguarded from future breaches.

138.    Additionally, Plaintiff Blackwood has always taken reasonable precautions to protect his PII.

**_Plaintiff Elizabeth Furcinito_**

139.    On March 30, 2021, Plaintiff Furcinito used her credit card via ApplePay to make a purchase with Herff Jones in the amount of $8.59 to pay for the shipping costs associated with her cap and gown for her graduation from Syracuse University.

140.    Following her purchase with Herff Jones, on May 19, 2021 an attempted fraudulent charge was made on Plaintiff Furcinito's card. Specifically, a criminal used her card to attempt an unauthorized fraudulent charge at a Best Buy store located in El Paso, Texas in the amount of $2,995.99. Plaintiff Furcinito experienced actual fraud as a result of the Data Breach.

141.    Plaintiff Furcinito subsequently communicated with Apple via its support messaging system about the fraudulent charge and as a result, was given a new card number for her Apple Card. Plaintiff also spent time checking other her bank accounts and transactions, and she had to review various account statements to determine if she suffered any additional fraudulent charges.

142.    Plaintiff Furcinito did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

143.    Before learning that her payment card was impacted by the Data Breach, Plaintiff Furcinito had never experienced fraudulent charges on or identity theft with respect to her Apple Card.

144.    As a result of being victimized by the Data Breach, Plaintiff Furcinito was required to spend a significant amount of time—approximately three hours—addressing the fraud concerns related to her compromised card.

145.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained Plaintiff Furcinito's PII at no compensation to her whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

146.    Plaintiff Furcinito also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

147.    Moreover, Plaintiff Furcinito suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

148.    Plaintiff Furcinito has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

149.    Additionally, Plaintiff Furcinito has always taken reasonable precautions to protect her PII.

### *Plaintiff Crysta Garner*

150.    Plaintiff Garner, while present in California, purchased graduation-related items from Herff Jones' website for her daughter's upcoming graduation from Mt. San Antonio College.

151.    She used her Mastercard credit card to complete the purchase.

152.    On or about May 8, 2021, Plaintiff Garner discovered fraudulent purchase activity on her Mastercard credit card.

153.    Plaintiff Garner did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

154.    Plaintiff Garner suffered an actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring her accounts for fraud. As a result of the Data Breach, Plaintiff Garner has spent and continues to spend considerable time and effort trying to protect her payment card account, including contacting her credit card provider to dispute the fraudulent charges and calling each place where fraudulent charges were made. This experience has caused Plaintiff Garner to worry and distress over the fraudulent charges that were attributed to her.

155.    Plaintiff Garner suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

156.    Knowing that a hacker stole her PII, and that her PII may be available for sale on the dark web, has caused Plaintiff Garner great concern. She is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff Garner hesitation about using Herff Jones' services, and reservations about shopping on other online websites.

157.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained her PII at no compensation to Plaintiff Garner whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

158.    Plaintiff Garner also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

159.    Moreover, Plaintiff Garner suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

160.    Plaintiff Garner has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

161.    Additionally, Plaintiff Garner has always taken reasonable precautions to protect her PII.

### *Plaintiff Angela Garrett*

162.    On or about April 15, 2021, Plaintiff Garrett purchased her Graduation package from Herff Jones including 10 Announcements, 25 Thank You Notes, Keepsake Announcement Cover, 30 Custom Return Address Labels, 25 Envelope Seals, 25 Tissues Inserts, HJ SmartShare10pk, Cap, Gown, Tassel, and Academic Diploma Frame for a total purchase amount of $229.20.

163.    Plaintiff Garrett used her debit card to complete the purchases.

164.    On or about May 9, 2021, Plaintiff Garrett experienced 10 unauthorized transactions on her debit card named Changi Recommends Singapore in the amounts of $1.01, $104.21, $104.21, $104.21, $104.21, $52.61, $52.61, $52.61, $52.61, and $1.01, for a total of $627.28.

165.    Plaintiff Garrett attempted to engage with Herff Jones to ascertain additional information about the Data Breach. Herff Jones' Customer Service associate, Autumn, stated on May 14, 2021, that the Data Breach "was being thoroughly investigated by our internal and third-party security experts," but that "the support team is not provided specifics on this issue and are unable to assist with any inquiries related to it."

166.    Plaintiff Garrett had additional email communications with Herff Jones' agent, Freda Robinson, on May 20, 2021. Ms. Robinson advised Plaintiff Garrett that "[f]or the most current information concerning this matter, please visit our website at herffjones.com and click on the red banner titled HERFF JONES CYBER SECURITY INCIDENT UPDATE. We sincerely apologize to those impacted by this incident."

167.    Plaintiff Garrett suffered an actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring her accounts for fraud. As a result of the Data Breach, Plaintiff Garrett reviews her financial accounts more frequently than she did before the Data Breach. This review has been time-consuming, burdensome, and inconvenient.

168.    Plaintiff Garrett suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use. Furthermore, Plaintiff Garrett continues to worry about the Data Breach and was distressed as a result of having funds debited from her account. Plaintiff Garrett was looking forward to graduating from college along with the sense of accomplishment that comes with such a major life achievement, but she was subjected to persistent worrying and distress because the funds in her account where substantially depleted due to the Data Breach.

169.    Knowing that a hacker stole her PII, and that her PII may be available for sale on the dark web, has caused Plaintiff Garrett great concern. She is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff Garrett hesitation about using Herff Jones' services, and reservations about shopping on other online websites.

170.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained her PII at no compensation to Plaintiff Garrett whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

171.   Moreover, Plaintiff Garrett suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

172.   Plaintiff Garrett has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

173.   Additionally, Plaintiff Garrett has always taken reasonable precautions to protect her PII.

174.   Had Plaintiff Garrett known that Herff Jones had inadequate data security, she would not have used her debit card to make purchases from Herff Jones.

### *Plaintiff Niculina Odagiu*

175.   On or about April 5, 2021, Plaintiff Odagiu used her Chase credit card to make a purchase with Herff Jones' website to pay for a school yearbook for her son.

176.   Following her purchase with Herff Jones, on or about May 30, 2021, fraudulent charges were made on Plaintiff Odagiu's Chase card. Specifically, a criminal used her card to make three unauthorized fraudulent charges with Puma.com and Kiwico, Inc. totaling approximately $970.63.

177.   Plaintiff Odagiu did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

178.   Before learning that her payment card was impacted by the Data Breach, Plaintiff Odagiu had never experienced fraudulent charges on or identity theft with respect to her Chase card.

179.    As a result of having been victimized by the Data Breach, Plaintiff Odagiu was required to spend a significant amount of time addressing the fraud concerns related to her compromised card.

180.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained Plaintiff Odagiu's PII at no compensation to her whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

181.    Plaintiff Odagiu also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

182.    Moreover, Plaintiff Odagiu suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

183.    Plaintiff Odagiu has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

184.    Additionally, Plaintiff Odagiu has always taken reasonable precautions to protect her PII.

### *Plaintiff Andrew Pawelczyk*

185.    On or about April 18, 2021, Plaintiff Pawelczyk used his Discover credit card to make a purchase with Herff Jones' website to pay for shipping for his graduation regalia.

186.    Following his purchase with Herff Jones, between May 9 and May 11, 2021, numerous fraudulent charges were made on Plaintiff Pawelczyk's Discover card.

187.   Plaintiff Pawelczyk did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

188.   Before learning that his payment card was impacted by the Data Breach, Plaintiff Pawelczyk had never experienced fraudulent charges on or identity theft with respect to his Discover card.

189.   As a result of having been victimized by the Data Breach, Plaintiff Pawelczyk was required to spend a significant amount of time addressing the fraud concerns related to his compromised card, and access to his account was frozen for several days.

190.   Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained Plaintiff Pawelczyk's PII at no compensation to him whatsoever. That is money lost for him, and money gained for the hackers – who could sell his PII on the dark web.

191.   Plaintiff Pawelczyk also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

192.   Moreover, Plaintiff Pawelczyk suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

193.   Plaintiff Pawelczyk has a continuing interest in ensuring his PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

194.   Additionally, Plaintiff Pawelczyk has always taken reasonable precautions to protect his PII.

*__Plaintiff Connie Quintana__*

195.    In April 2021, Plaintiff Quintana purchased her graduation wardrobe (e.g., cap and gown) from Herff Jones' website.

196.    Plaintiff Quintana used one of her payment cards to make this purchase.

197.    After making this purchase, Plaintiff Quintana received a notification from her university informing her that Herff Jones had sustained a data breach and that Plaintiff Quintana should be on the lookout for suspicious activity on her payment card that she used at Herff Jones. Plaintiff Quintana did not timely receive a similar notification from Herff Jones, despite the company knowing about the Data Breach.

198.    The notification letter from her university informed Plaintiff Quintana that unauthorized individuals may have gained access to her PII, including PCD, that she used to make her purchase on Herff Jones' website.

199.    Since her purchase on Herff Jones' website, Plaintiff Quintana received security alerts from her bank indicating that it detected "unusual activity" on her payment card. In particular, on May 13, 2021, there were at least three charges to "Steamgames.com" that were charged to her card in the amounts of $100.00, $4.99, and $4.99. Plaintiff Quintana never made nor authorized these charges. The charges were the result of fraudulent transactions.

200.    As a result of the fraudulent transactions, Plaintiff Quintana was forced to put a freeze on her payment card and spend time dealing with her bank to address the fraudulent transactions.

201.    Plaintiff Quintana suffered actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

202.    Plaintiff Quintana suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

203.    Plaintiff Quintana was not reimbursed for the loss of use of, loss of access to, or restrictions placed upon her account and the resulting loss of use of her own funds that occurred as a result of the Data Breach.

204.    Plaintiff Quintana would not have used her payment card to make purchases from the Herff Jones website—indeed, she would not have shopped with Herff Jones at all during the period of the Data Breach—had Herff Jones disclosed that it lacked adequate computer systems and data security practices to safeguard customers' personal and financial information from theft, and that it was subject to an ongoing data breach at the time Plaintiff Quintana made her purchase. Herff Jones also failed to provide Plaintiff Quintana with timely and accurate notice of the data breach.

205.    Plaintiff Quintana suffered actual injury from having her PII and PCD compromised and/or stolen as a result of the Data Breach.

206.    Plaintiff Quintana suffered actual injury and damages in paying money to and purchasing products from Herff Jones during the Data Breach that she would not have paid or purchased had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' personal and financial information and had Herff Jones provided timely and accurate notice of the Data Breach.

207.    Plaintiff Quintana suffered actual injury in the form of damages to and diminution in the value of her personal and financial information—a form of intangible property that the

Plaintiff Quintana entrusted to Herff Jones for the purpose of making purchases on its website and which was compromised in, and as a result of, the Data Breach.

208.    Plaintiff Quintana suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by her personal and financial information being placed in the hands of criminals who have already misused such information stolen in the Data Breach via the sale of Plaintiff Quintana's and the Class Members' personal and financial information on the Internet black market.

209.    Plaintiff Quintana has a continuing interest in ensuring that her PCD, which remains in the possession of Herff Jones, is protected and safeguarded from future breaches.

210.    Additionally, Plaintiff Quintana has always taken reasonable precautions to protect her PII.

### *Plaintiff Kristin Walker*

211.    On or about March 31, 2021, Plaintiff Walker placed an order with Herff Jones to rent her cap and gown.

212.    She used her Bank of America debit card to complete the purchase.

213.    From May 5, 2021 to May 6, 2021, a series of six unauthorized purchases totaling $229.91 were made on the card.

214.    Plaintiff Walker did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

215.    Bank of America changed the account number in response to the illegal charges and mailed her a new card, though there was a delay between when she learned her prior card was compromised and could not be used and when she received the new card, which frustrated Plaintiff Walker as it impeded her ability to make purchases.

216.   Plaintiff Walker suffered an actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring her accounts for fraud. As a result of the Data Breach, Plaintiff Walker had to take time out of her day to deal with the fraudulent charges and the account number change, as well as to change over recurring charges that would otherwise be made on the card.  This was time she otherwise would have spent performing other activities. She also had to use alternative methods of payment until she received their new credit card.

217.   Ms. Walker was ultimately refunded her fraudulent charges on or about May 10, 2021, but she did not have access to those funds during that time.

218.   Knowing that a hacker stole her PII, and that her PII may be available for sale on the dark web, has caused Plaintiff Walker great concern. She is now very concerned about credit card theft and identity theft in general. This breach has given Plaintiff Walker hesitation about using Herff Jones' services, and reservations about shopping on other online websites.

219.   Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained her PII at no compensation to Plaintiff Walker whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

220.   Plaintiff Walker also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

221.   Moreover, Plaintiff Walker suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

222.    Plaintiff Walker has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected and safeguarded from future breaches.

223.    Additionally, Plaintiff Walker has always taken reasonable precautions to protect her PII.

### *Plaintiff Keisha Windham*

224.    On or about March 29, 2021, Plaintiff Windham used her Wells Fargo credit card to make a purchase with Herff Jones' website to pay for stationery and rental for her graduation regalia.

225.    Following her purchase with Herff Jones, on or about June 20, 2021, a fraudulent charge was made on Plaintiff Windham's Wells Fargo card. Specifically, a criminal used her card to make a single unauthorized fraudulent charge of $59.89 with DoorDash.

226.    Plaintiff Windham did not receive a timely direct notice from Herff Jones of the Data Breach, despite the company knowing about the Data Breach.

227.    Before learning that her payment card was impacted by the Data Breach, Plaintiff Windham had never experienced fraudulent charges on or identity theft with respect to her Wells Fargo card.

228.    As a result of having been victimized by the Data Breach, Plaintiff Windham was required to spend a significant amount of time addressing the fraud concerns related to her compromised card.

229.    Now, due to Herff Jones' misconduct and the resulting Data Breach, hackers obtained Plaintiff Windham's PII at no compensation to her whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

230.     Plaintiff Windham also suffered actual injury and damages in paying money to, and purchasing and/or renting products from, Herff Jones' website during the Data Breach, expenditures which she would not have made had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

231.     Moreover, Plaintiff Windham suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

232.     Plaintiff Windham has a continuing interest in ensuring her PII, which remains in Herff Jones' possession, is protected, and safeguarded from future breaches.

233.     Additionally, Plaintiff Windham has always taken reasonable precautions to protect her PII.

## CLASS ALLEGATIONS

234.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated ("the Class").

235.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nationwide Class**:
> All individuals in the United States whose PII was compromised as a result of the Data Breach.
>
> **California Subclass**:
> All residents of California whose PII was compromised as a result of the Data Breach.
>
> **Illinois Subclass**:
> All residents of Illinois whose PII was compromised as a result of the Data Breach.

**New York Subclass**:
All residents of New York whose PII was compromised as a result of the
Data Breach.

**Indiana Subclass**:
All residents of Indiana whose PII was compromised as a result of the Data
Breach.

**Wisconsin Subclass**:
All residents of Wisconsin whose PII was compromised as a result of the
Data Breach.

**Missouri Subclass**:
All residents of Missouri whose PII was compromised as a result of the Data
Breach.

236.    Excluded from each of the above Classes are Defendant and its parents or
subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors,
affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any
Judge to whom this case is assigned as well as his or her judicial staff and immediate family
members.

237.    Plaintiffs reserve the right to modify or amend the definitions of the proposed
Classes before the Court determines whether certification is appropriate.

238.    Each of the proposed classes meet the criteria for certification under Fed. R. Civ.
P. 23(a), (b)(2), and (b)(3).

239.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them
is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time,
based on information and belief, the Class consists of thousands of customers of Herff Jones whose
data was compromised in the Data Breach.

240.   <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether Herff Jones engaged in the conduct alleged herein;

b.   Whether Herff Jones' conduct violated the state consumer protection laws invoked below;

c.   When Herff Jones actually learned of the data breach and whether its response was adequate;

d.   Whether Herff Jones had a legal duty to adequately protect Plaintiffs' and the Class Members' PII;

e.   Whether Herff Jones breached its legal duty by failing to adequately protect Plaintiffs' and the Class Members' PII;

f.   Whether Herff Jones had a legal duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class Members;

g.   Whether Herff Jones breached its duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class Members;

h.   Whether Herff Jones implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiffs' and the Class Members' PII;

i.   Whether Herff Jones knew or should have known that it did not employ reasonable measures to keep Plaintiffs' and the Class Members' PII secure and prevent loss or misuse of that PII;

j.   Whether Herff Jones adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

k.   Whether Plaintiffs and the Class Members are entitled to recover actual damages and/or statutory damages;

l.   Whether Plaintiffs and the other Class Members are entitled to additional credit or identity monitoring beyond what the company is offering and are entitled to other monetary relief; and

m.   Whether Plaintiffs and the Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

241.   Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was compromised in the Data Breach.

242.   Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including data breach class actions.

243.   Predominance. Herff Jones has engaged in a common course of conduct toward Plaintiffs and the Class Members, in that all the Plaintiffs' and the Class Members' PII was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Herff Jones' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

244.   Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Herff Jones. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

245.    Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Herff Jones has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

246.    Finally, all members of the purposed Classes are readily ascertainable. Herff Jones has access to addresses and other contact information for millions of members of the Classes, which can be used to identify Class Members.

## COUNT I

## NEGLIGENCE

## (On behalf of Plaintiffs and the Nationwide Class)

247.    Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

248.    Herff Jones solicited and gathered PII, including PCD, of Plaintiffs and the Nationwide Class to facilitate sales transactions.

249.    Herff Jones knew, or should have known, of the risks inherent in collecting the PII of Plaintiffs and the Nationwide Class Members and the importance of adequate security. On

information and belief, Herff Jones received warnings that hackers routinely attempted to access and acquire PII, and PCD in particular, without authorization. Herff Jones also knew or should have known about numerous, well-publicized payment card data breaches involving other national retailers.

250.    Herff Jones owed duties of care to Plaintiffs and the Nationwide Class Members whose PII was entrusted to it. Herff Jones' duties included the following:

a.    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII and PCD in its possession;

b.    To protect customers' PII and PCD using reasonable and adequate security procedures and systems that are compliant with the industry standards;

c.    To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, and

d.    To promptly notify Plaintiffs and the Nationwide Class Members of the data breach.

251.    By collecting this data, and using it for commercial gain, Herff Jones had a duty of care to use reasonable means to secure and safeguard its computer property, to prevent disclosure of the PII and PCD, and to safeguard the PII and PCD from theft. Herff Jones' duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

252.    Because Herff Jones knew that a breach of its systems would damage thousands of its customers, including Plaintiffs and the Nationwide Class Members, it had a duty to adequately protect their PII.

253.    Herff Jones owed a duty of care not to subject Plaintiffs and the Nationwide Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

254.    Herff Jones knew, or should have known, that its computer systems did not adequately safeguard the PII of Plaintiffs and the Nationwide Class Members.

255.    Herff Jones breached its duties of care by failing to provide, or by acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiffs and the Nationwide Class Members.

256.    Herff Jones breached its duties of care by failing to promptly identify the Data Breach and then provide prompt notice of the Data Breach to the persons whose PII was compromised.

257.    Herff Jones acted with reckless disregard for the rights of Plaintiffs and the Nationwide Class Members by failing to provide prompt and adequate individual notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use the PII compromised in the data breach.

258.    Herff Jones had a special relationship with Plaintiffs and the Nationwide Class Members. Plaintiffs' and the Nationwide Class Members' willingness to entrust Herff Jones with their PII was predicated on the understanding that Herff Jones would take adequate security precautions. Moreover, only Herff Jones had the ability to protect its systems (and the PII that it stored on them) from attack.

259.    Herff Jones' own conduct also created a foreseeable risk of harm to Plaintiffs and the Nationwide Class Members and their PII. Herff Jones' misconduct included failing to:

    a.    Secure its e-commerce website;

51

b.   Secure access to its servers;

c.   Comply with industry standard security practices;

d.   Follow the Payment Card Industry Data Security Standard ("PCI DSS");

e.   Encrypt PCD at the point-of-sale and during transit;

f.   Employ adequate network segmentation;

g.   Implement adequate system and event monitoring;

h.   Utilize modern payment systems that provided more security against intrusion;

i.   Install updates and patches in a timely manner; and

j.   Implement the systems, policies, and procedures necessary to prevent this type of data breach.

260.    Herff Jones also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and the Nationwide Class Members' PII and promptly notify them about the data breach.

261.    Herff Jones breached the duties it owed to Plaintiffs and the Nationwide Class Members in numerous ways, including:

a.    By creating a foreseeable risk of harm through the misconduct previously described;

b.    By failing to implement adequate security systems, protocols and practices sufficient to protect PII both before and after learning of the Data Breach;

c.    By failing to comply with the minimum industry data security standards, including the PCI-DSS, during the period of the data breach; and

d.    By failing to timely and accurately disclose to each class member that the personal information of Plaintiffs and the Class had been improperly acquired or accessed.

262.    But for Herff Jones' wrongful and negligent breach of the duties it owed Plaintiffs and the Nationwide Class Members, their PII either would not have been compromised or they would have been able to prevent some or all of their damages.

263.    As a direct and proximate result of Herff Jones' negligent conduct, Plaintiffs and the Nationwide Class Members have suffered damages and are at imminent risk of further harm.

264.    The injury and harm that Plaintiffs and the Nationwide Class Members suffered (as alleged above) were reasonably foreseeable.

265.    The injury and harm that Plaintiffs and the Nationwide Class Members suffered (as alleged above) were the direct and proximate result of Herff Jones' negligent conduct.

266.    Plaintiffs and the Nationwide Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II

## NEGLIGENCE *PER SE*

### (On behalf of Plaintiff and the Nationwide Class)

267.    Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

268.    Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Herff Jones had a duty to provide fair and adequate computer systems and data security to safeguard the PII, including PCD, of Plaintiff and the Nationwide Class Members.

269.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Herff Jones, of failing to use reasonable measures to protect PII and PCD. The FTC publications and orders described above also form part of the basis of Herff Jones' duty in this regard.

270.     Herff Jones solicited, gathered, and stored PII and PCD, of Plaintiffs and the Nationwide Class Members to facilitate sales transactions that affect commerce.

271.     Herff Jones violated the FTCA by failing to use reasonable measures to protect PII of Plaintiffs and the Class and not complying with applicable industry standards, as described herein.

272.     Herff Jones' violation of the FTCA constitutes negligence *per se*.

273.     Plaintiffs and the Nationwide Class Members are within the class of persons that the FTCA was intended to protect.

274.     The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Nationwide Class Members.

275.     As a direct and proximate result of Herff Jones' negligence *per se*, Plaintiffs and the Nationwide Class Members have suffered, and continue to suffer, injuries damages arising from their inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by contacting their financial institutions to place to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity.

276.     Herff Jones breached its duties to Plaintiffs and the Nationwide Class Members under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Nationwide Class Members' PII.

277.     But for Herff Jones' wrongful and negligent breach of its duties owed to Plaintiffs and the Nationwide Class Members, Plaintiffs and the Nationwide Class Members would not have been injured.

278.     The injury and harm suffered by Plaintiffs and the Nationwide Class Members was the reasonably foreseeable result of Herff Jones' breach of its duties. Herff Jones knew or should have known that it was failing to meet its duties, and that Herff Jones' breach would cause Plaintiffs and the Nationwide Class Members to experience the foreseeable harms associated with the exposure of their PII.

279.     As a direct and proximate result of Herff Jones' negligent conduct, Plaintiffs and the Nationwide Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

## COUNT III

## BREACH OF IMPLIED CONTRACT

### (On behalf of Plaintiffs and the Nationwide Class)

280.     Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

281.     When Plaintiffs and the Nationwide Class Members provided their PII to Herff Jones in making purchases on its website, they entered into implied contracts by which Herff Jones agreed to protect their PII and timely notify them in the event of a data breach.

282.    Herff Jones solicited and invited its customers, including Plaintiffs and the Nationwide Class Members, to provide their PII and make purchases on its website using payment cards in order to increase sales by making purchases more convenient.

283.    An implicit part of the offer was that Herff Jones would safeguard the PII using reasonable or industry-standard means and would timely notify Plaintiffs and the Nationwide Class Members in the event of a data breach.

284.    Herff Jones also affirmatively represented in its Privacy Policy that it protected the PII of Plaintiffs and the Nationwide Class Members in several ways, as described above.

285.    Based on the implicit understanding and on Herff Jones' representations, Plaintiffs and the Nationwide Class Members accepted the offers and provided Herff Jones with their PII by using their payment cards in connection with purchases on the Herff Jones website during the period of the data breach.

286.    Herff Jones manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiffs' and the Nationwide Class Members' PII through, among other things, its Privacy Policy.

287.    In entering into such implied contracts, Plaintiffs and the Nationwide Class Members reasonably believed and expected that Herff Jones' data security practices complied with relevant laws and regulations and were consistent with industry standards.

288.    Plaintiffs and the Nationwide Class Members would not have provided their PII to Herff Jones had they known that Herff Jones would not safeguard their PII as promised or provide timely notice of a data breach.

289.    Plaintiffs and the Nationwide Class Members fully performed their obligations under the implied contracts with Herff Jones.

56

290. Herff Jones breached the implied contracts by failing to safeguard Plaintiffs' and the Nationwide Class Members' PII and failing to provide them with timely and accurate notice when their PII was compromised in the data breach.

291. The losses and damages Plaintiffs and the Nationwide Class Members sustained (as described above) were the direct and proximate result of Herff Jones' breaches of its implied contracts with them.

292. Plaintiffs and the Nationwide Class Members also are entitled to injunctive relief requiring Herff Jones to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Nationwide Class Members.

## COUNT IV

## UNJUST ENRICHMENT

## (On behalf of Plaintiff and the Nationwide Class)

293. Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

294. This count is pleaded in the alternative to Count III above.

295. Plaintiffs and members of the Nationwide Class conferred a monetary benefit on Herff Jones. Specifically, they made purchases from Herff Jones and provided Herff Jones with their PII by using their payment cards for the purchases that they would not have made if they had known that Herff Jones did not provide adequate protection of their PII.

296. Herff Jones knew that Plaintiffs and the Nationwide Class Members conferred a benefit on the Herff Jones website. Herff Jones profited from their purchases and used their PII for its own business purposes.

297.   The monies for goods that Plaintiffs and the Nationwide Class Members paid to Herff Jones were to be used by Herff Jones, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

298.   Herff Jones failed to secure Plaintiffs' and the Nationwide Class Members' PII, and therefore, it was unjustly enriched by the purchases made by Plaintiffs and the Class that they would not have made had they known that Herff Jones did not keep their personal information secure.

299.   Plaintiffs and the Nationwide Class Members have no adequate remedy at law.

300.   Under the circumstances, it would be unjust for Herff Jones to be permitted to retain any of the benefits that Plaintiffs and the Nationwide Class Members conferred on it.

301.   Herff Jones should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Nationwide Class Members proceeds that it unjustly received from them. In the alternative, Herff Jones should be compelled to refund the amounts that Plaintiffs and the Nationwide Class overpaid.

**COUNT V**

**DECLARATORY JUDGMENT**

**(On Behalf of Plaintiffs and the Nationwide Class)**

302.   Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

303.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

304.     Herff Jones owes duties of care to Plaintiff and the Nationwide Class Members that required it to adequately secure their PII and PCD.

305.     Herff Jones still possesses PII and PCD regarding Plaintiffs and the Nationwide Class Members.

306.     Plaintiffs allege that Herff Jones' data security measures remain inadequate. Herff Jones publicly denies these allegations. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

307.     Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.  Herff Jones owes a legal duty to secure consumers' PII and PCD and to timely notify consumers of a data breach under the common law and Section 5 of the FTCA;

    b.  Herff Jones existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' PII and PCD;

    c.  Herff Jones continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PCD;

    d.  to comply with its explicit or implicit contractual obligations and duties of care, Herff Jones must implement and maintain reasonable security measures, including, but not limited to:

i. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Herff Jones' systems on a periodic basis, and ordering Herff Jones to promptly correct any problems or issues detected by such third-party security auditors;

ii. Engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. Auditing, testing, and training its security personnel regarding any new or modified procedures;

iv. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Herff Jones' systems;

v. Conducting regular database scanning and securing checks;

vi. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

vii. Purchasing credit monitoring services for Plaintiffs and the Nationwide Class Members for a period of ten years; and

viii. Meaningfully educating its users about the threats they face as a result of the loss of their PII and PCD to third parties, as well as the steps Herff Jones' customers must take to protect themselves.

308.     This Court also should issue corresponding prospective injunctive relief requiring Herff Jones to employ adequate security protocols consistent with law and industry standards to protect consumers' PII and PCD.

309.     If an injunction is not issued, Plaintiffs and the Nationwide Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Herff Jones. The risk of another such breach is real, immediate, and substantial. If another breach at Herff Jones occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

310.     The hardship to Plaintiffs and the Nationwide Class Members if an injunction does not issue exceeds the hardship to Herff Jones if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Herff Jones of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Herff Jones has a pre-existing legal obligation to employ such measures.

311.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Herff Jones, thus eliminating the additional injuries that would result to Plaintiffs and consumers whose PII would be further compromised.

## COUNT VI

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

### (On Behalf of Plaintiffs Quintana, Walker and Garner and the California Subclass)

312.     Plaintiffs Quintana, Walker and Garner ("California Plaintiffs") restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

313.     Herff Jones is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

314. Herff Jones violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

315. Herff Jones' unlawful, unfair acts and deceptive acts and practices include:

a. Herff Jones failed to implement and maintain reasonable security measures to protect California Plaintiffs' and the California Subclass Members' PII and PCD from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b. Herff Jones failed to:

  i. Secure its e-commerce website;

  ii. Secure access to its servers;

  iii. Comply with industry standard security practices;

  iv. Follow the PCI-DSS standards;

  v. Encrypt PCD at the point-of-sale and during transit;

  vi. Employ adequate network segmentation;

  vii. Implement adequate system and event monitoring;

  viii. Utilize modern payment systems that provided more security against intrusion;

  ix. Install updates and patches in a timely manner; and

  x. Implement the systems, policies, and procedures necessary to prevent this type of data breach.

c. Herff Jones failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security. This conduct, with little if any utility, is unfair when weighed against the harm to California Plaintiffs and the California Subclass Members whose PII has been compromised;

d.  Herff Jones' failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumer data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTCA, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

e.  Herff Jones' failure to implement and maintain reasonable security measures also lead to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because California Plaintiffs and the California Subclass Members could not know of Herff Jones' inadequate security and compromise of its e-commerce site, consumers could not have reasonably avoided the harms that Herff Jones caused;

f.  Misrepresenting that it would protect the privacy and confidentiality of California Plaintiffs and the California Subclass Members' PII and PCD, including by implementing and maintaining reasonable security measures;

g.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of California Plaintiffs and the California Subclass Members' PII, including duties imposed by the FTCA, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

h.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure California Plaintiffs and the California Subclass Members' PII and PCD;

     i.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of California Plaintiffs and the California Subclass Members' PII and PCD, including duties imposed by the FTCA, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

     j.    Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82; and

     k.    Among other ways to be discovered and proved at trial.

316.    Herff Jones' representations and omissions to California Plaintiffs and the California Subclass Members were material because they were likely to deceive reasonable consumers about the adequacy of Herff Jones' data security and ability to protect the privacy of consumers' PII and PCD.

317.    Herff Jones intended to mislead California Plaintiffs and the California Subclass Members and induce them to rely on its misrepresentations and omissions.

318.    Had Herff Jones disclosed to California Plaintiffs and the California Subclass Members that its data systems were not secure and, thus, vulnerable to attack, or disclosed that its website was compromised by a hacker, Herff Jones would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Herff Jones received, maintained, and compiled California Plaintiffs and the California Subclass Members' PII and PCD as part of the services and goods Herff Jones provided without advising California Plaintiffs and the California Subclass Members that Herff Jones' data security practices were insufficient to maintain the safety and confidentiality of California Plaintiffs and the California Subclass Members' PII and PCD. Accordingly, California Plaintiffs

and the California Subclass Members acted reasonably in relying on Herff Jones' misrepresentations and omissions, the truth of which they could not have discovered.

319.    Herff Jones acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded California Plaintiffs' and the California Subclass Members' rights.

320.    As a direct and proximate result of Herff Jones' unfair, unlawful, and fraudulent acts and practices, California Plaintiffs and the California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

321.    California Plaintiffs and the California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Herff Jones' unfair, unlawful, and fraudulent business practices or use of their PII and PCD; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

322.    California Plaintiffs and California Class Members are also entitled to injunctive relief requiring Herff Jones to, e.g., (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; (c) continue to provide adequate credit monitoring to all California Class Members; and other injunctive relief as identified in Paragraph 272(d)(i)-(viii).

## COUNT VII

### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT ("CCPA"), CAL. CIV. CODE §§ 1798.100, *ET SEQ.* (§ 1798.150(A))

### (On Behalf of Plaintiffs Quintana, Walker and Garner and the California Subclass)

323.     California Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

324.     This Count is brought on behalf of California Plaintiffs and the California Subclass.

325.     Herff Jones is a "business" as defined by Cal. Civ. Code § 1798.140(c).

326.     California Plaintiffs and the California Subclass Members are "consumers" as defined by Cal. Civ. Code § 1798.140(g).

327.     California Plaintiffs and the California Subclass Members' PII and PCD constitutes "personal information" as defined by Cal. Civ. Code 1798.81.5(d)(1)(A).

328.     Herff Jones "collects" consumers' PII and PCD, including the PII and PCD of California Plaintiffs and the California Subclass Members, as defined by Cal. Civ. Code § 1798.140(e).

329.     Herff Jones violated section 1798.150(a) of the CCPA by failing to prevent California Plaintiffs' and the California Subclass Members' nonencrypted and nonredacted PII and PCD from unauthorized access and exfiltration, theft, or disclosure as a result of Herff Jones' violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII and PCD.

330.     As a direct and proximate result of Herff Jones' violation of its duty, California Plaintiffs and the California Subclass Members' PII and PCD was subjected to an unauthorized access and exfiltration, theft, or disclosure.

331.    As a direct and proximate result of Herff Jones' violation of its duty, California Plaintiffs and the California Subclass Members were injured and lost money or property as described herein and as will be proved at trial.

332.    Herff Jones knew or should have known that its computer systems and data security practices were inadequate to safeguard California Plaintiffs and the California Subclass Members' PII and PCD entrusted to it, and that risk of a data breach or theft was highly likely.

333.    Pursuant to Section 1798.150(b) of the CCPA, by this Complaint, Plaintiffs Quintana and Walker have given written notice to Herff Jones of its violations of section 1798.150(a) by a certified mail letter.  Herff Jones failed to "actually cure" its violations and failed to provide "an express written statement that the violations have been cured and that no further violations shall occur" within 30 days of the written notice.

334.    California Plaintiffs and the California Subclass Members seek relief under § 1798.150(a), including, but not limited to statutory damages in the amount prescribed by law, injunctive or declaratory relief; any other relief the Court deems proper; and attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## COUNT VIII

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE § 1750, *ET SEQ.*

**(On Behalf of Plaintiff Walker, Quintana and Garner and the California Subclass)**

335.    California Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

336.    This Count is brought on behalf of California Plaintiffs and the California Subclass.

337.    The CLRA was enacted to protect consumers against unfair and deceptive business practices. It extends to transactions that are intended to result, or which have resulted, in the sale

or lease of goods or services to consumers. Herff Jones' acts, omissions, representations, and practices as described herein fall within the CLRA because the design, development, and marketing of Herff Jones' products are intended to and did result in sales and rental of consumer products.

338.   California Plaintiffs and the other California Subclass Members are consumers within the meaning of Cal. Civ. Code § 1761(d).

339.   Herff Jones' acts, omissions, misrepresentations, and practices were and are likely to deceive consumers. By omitting key information about the safety and security of its network Herff Jones violated the CLRA.  Herff Jones had exclusive knowledge of undisclosed material facts, namely, that its network was defective and/or unsecure, and withheld that knowledge from California Subclass members.

340.   Herff Jones' acts, omissions, misrepresentations, and practices alleged herein violated the following provisions of section 1770 the CLRA, which provides, in relevant part, that:

> The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . .
> (7)  Representing that goods or services are of a particular standard, quality, or grade . . . if they are of another.
> (9)  Advertising goods or services with intent not to sell them as advertised.
> (14)  Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

341.   For purposes of the CLRA, omissions are actionable along with representations.

342.     Herff Jones knew or should have known that it did not employ reasonable measures that would have kept California Plaintiffs and California Subclass Members' PII secure and prevented the loss or misuse of their PII. For example, Herff Jones failed to take reasonable steps to prevent the loss of PII through their servers through appropriate encryption and industry best practices.

343.     Herff Jones' deceptive acts and business practices induced California Plaintiffs and California Subclass Members to provide PII, including payment card information, for the purchase or rental of Herff Jones' products. But for these deceptive acts and business practices, California Plaintiffs and California Subclass Members would not have purchased or rented Herff Jones' products, or they would not have paid the prices they paid for those products.

344.     Herff Jones' representations that it would secure and protect California Plaintiffs and California Subclass Members' PII in its possession were facts that reasonable persons could be expected to rely upon when deciding whether to purchase insurance services.

345.     California Plaintiffs and California Subclass Members were harmed as the result of Herff Jones' violations of the CLRA, because their PII was compromised, placing them at a greater risk of identity theft; they lost the unencumbered use of their PII; and their PII was disclosed to third parties without their consent.

346.     California Plaintiffs and California Subclass Members suffered injury in fact and lost money or property as the result of Herff Jones' failure to secure its PII; the value of their PII was diminished as the result of Herff Jones' failure to secure their PII; and they have expended time and money to rectify or guard against further misuse of their PII.

347.     Herff Jones' conduct was oppressive, fraudulent, and/or malicious, thereby justifying an award of punitive damages.

348.     As the result of Herff Jones' violation of the CLRA, California Plaintiffs, on behalf of themselves and the California Subclass Members, and the general public of the State of California, seek injunctive relief prohibiting Herff Jones from continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2), and such other equitable relief, including restitution, and a declaration that Herff Jones' conduct violated the CLRA.

349.     Pursuant to Cal. Civ. Code § 1782, on May 21, 2021, Plaintiff Walker mailed Herff Jones notice in writing, via U.S. certified mail, of the particular violations of Cal. Civ. Code § 1770 of the CLRA and demanded that it rectify the actions described above by providing complete monetary relief, agreeing to be bound by Herff Jones' legal obligations and to give notice to all affected customers of their intent to do so. Herff Jones failed to respond to the letter within 30 days and to take the actions demanded to rectify its violations of the CLRA. As a result, Plaintiff Walker seeks monetary damages and attorneys' fees as allowed by the CLRA.

**COUNT IX**

**CALIFORNIA CUSTOMER RECORDS ACT ("CCRA"),
CAL. CIV. CODE §1798.80, *ET SEQ.***

**(On behalf of Plaintiffs Garner, Quintana and Walker and the California Subclass)**

350.     California Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

351.     This Count is brought on behalf of California Plaintiffs and the California Subclass.

352.     "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the

70

information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

353.    Herff Jones is a business that maintains PII about California Plaintiffs and California Subclass Members within the meaning of Cal. Civ. Code § 1798.81.5. Such PII includes, but is not limited to, the first and last names of California Plaintiffs and the California Subclass Members, along with account numbers or credit or debit card numbers, in combination with any required security code, access code, or password that would permit access to California Plaintiffs and the California Subclass Members' financial accounts. See Cal. Civ. Code § 1798.81.5(d)(1)(A)(iii).

354.    Businesses that maintain computerized data that includes PII are required to "notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b). Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82.

355.    Herff Jones is a business that maintains computerized data that includes PII as defined by Cal. Civ. Code § 1798.80.

356.    California Plaintiffs and California Subclass Members' PII includes Personal Information as covered by Cal. Civ. Code § 1798.82.

357.    Because Herff Jones reasonably believed that California Plaintiffs and California Subclass Members' PII was acquired by unauthorized persons during the Data Breach, Herff Jones had an obligation to disclose the Data Breach, immediately following its discovery, to the owners

or licensees of the PII (i.e., California Plaintiffs and the California Subclass Members) as mandated by Cal. Civ. Code § 1798.82.

358.   By failing to disclose the Data Breach immediately following its discovery, Herff Jones violated Cal. Civ. Code § 1798.82.

359.   As a direct and proximate result of Herff Jones' violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, California Plaintiffs and California Subclass Members suffered damages, as described above and as will be proven at trial.

360.   California Plaintiffs and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT X

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ILLINOIS CFA"), 815 ILL. COMP. STAT. §§ 505/1, *ET SEQ.*

**(On behalf of Plaintiffs Garrett and Odagiu and the Illinois Subclass)**

361.   Plaintiffs Garrett and Odagiu restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

362.   This Count is brought on behalf of Plaintiffs Garrett and Odagiu and the Illinois Subclass.

363.   Plaintiffs Garrett and Odagiu and the Illinois Subclass are "consumers" as that term is defined in 815 Ill. Comp. Stat. § 505/1(e).

364.   Plaintiffs Garrett, Odagiu, the Illinois Subclass, and Herff Jones are "persons" as that term is defined in 815 Ill. Comp. Stat. § 505/1(c).

365.    Herff Jones is engaged in "trade" or "commerce," including provision of services, as those terms are defined under 815 Ill. Comp. Stat. § 505/1(f).

366.    Herff Jones engages in the "sale" of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

367.    Herff Jones engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in the Illinois CFA) in violation of the Illinois CFA, including but not limited to the following:

    a.  failing to maintain sufficient security to keep Plaintiffs Garrett's and Odagiu's and the Illinois Subclass Members' sensitive PII from being hacked and stolen;

    b.  misrepresenting material facts to Plaintiffs Garrett and Odagiu and the Illinois Subclass Members, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff Garrett and the Illinois Subclass Members' PII from unauthorized disclosure, release, data breaches, and theft;

    c.  misrepresenting material facts to Plaintiffs Garrett and Odagiu and the Illinois Subclass Members in connection with sale of goods and services, by representing that Herff Jones did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Garrett and the Illinois Subclass Members' PII; and

    d.  failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiffs Garrett and Odagiu and the Illinois

Subclass Members' PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

368.    In addition, Herff Jones' failure to disclose that its computer systems were not well-protected and that Plaintiffs Garrett and Odagiu and the Illinois Subclass Members' sensitive information was vulnerable and susceptible to intrusion and cyberattacks constitutes deceptive and/or unfair acts or practices because Herff Jones knew such facts would (a) be unknown to and not easily discoverable by Plaintiffs Garrett and Odagiu and the Illinois Subclass; and (b) defeat Plaintiff Garrett and the Illinois Subclass Members' ordinary, foreseeable and reasonable expectations concerning the security of their PII on Herff Jones' servers.

369.    Herff Jones intended that Plaintiffs Garrett and Odagiu and the Illinois Subclass Members rely on its deceptive and unfair acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts, in connection with Herff Jones' offering of goods and services and incorporating Plaintiffs Garrett and Odagiu and the Illinois Subclass Members' PII on its servers, in violation of the Illinois CFA.

370.    Herff Jones also engaged in unfair acts and practices by failing to maintain the privacy and security of Plaintiffs Garrett and Odagiu and the Illinois Subclass Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the data breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45) and similar state laws.

371.    Herff Jones' wrongful practices occurred in the course of trade or commerce.

372.    Herff Jones' wrongful practices were and are injurious to the public interest because those practices were part of a generalized course of conduct on the part of Herff Jones that applied to Plaintiffs Garrett and Odagiu and all Illinois Subclass Members and were repeated continuously

74

before and after Herff Jones obtained sensitive PII and other information from Plaintiffs Garrett

and Odagiu and the Illinois Subclass Members. Plaintiffs Garrett and Odagiu and all Illinois

Subclass Members were adversely affected by Herff Jones' conduct and the public was and is at

risk as a result thereof.

373.    Herff Jones also violated 815 Ill. Comp. Stat. § 505/2 by failing to immediately

notify affected customers of the nature and extent of the Data Breach pursuant to the Illinois

Personal Information Protection Act, 815 Ill. Comp. Stat. § 530/1, et. seq., which provides, at

Section 10:

> Notice of Breach.
> Any data collector that owns or licenses personal information
> concerning an Illinois resident shall notify the resident at no charge
> that there has been a breach of the security of the system data
> following discovery or notification of the breach. The disclosure
> notification shall be made in the most expedient time to determine
> the scope of the breach and restore the reasonable integrity, security
> and confidentiality of the data system.

374.    815 Ill. Comp. Stat. § 530/20 provides that a violation of 815 Ill. Comp. Stat. §

530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business

Practices Act."

375.    As a result of Herff Jones' wrongful conduct, Plaintiffs Garrett and Odagiu and the

Illinois Subclass Members were injured in that they never would have allowed their sensitive PII

– the value of which Plaintiffs Garrett and Odagiu and the Illinois Subclass Members no long have

control – to be provided to Herff Jones if they had been told or knew that Herff Jones failed to

maintain sufficient security to keep such data from being hacked and taken by others.

376.    Herff Jones' unfair and/or deceptive conduct proximately caused Plaintiffs Garrett

and Odagiu and the Illinois Subclass Members' injuries because, had Herff Jones maintained

customer PII with adequate security, Plaintiffs Garrett and Odagiu and the Illinois Subclass

Members would not have lost it.

377. As a direct and proximate result of Herff Jones' conduct, Plaintiffs Garrett and Odagiu and the Illinois Subclass Members have suffered harm, including but not limited to loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; financial losses related to the purchases made at Herff Jones that Plaintiffs Garrett and Odagiu and the Illinois Subclass Members would have never made had they known of Herff Jones' careless approach to cybersecurity; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

378. Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiffs Garrett and Odagiu and the Illinois Subclass Members seeks actual, compensatory, and punitive damages (pursuant to 815 Ill. Comp. Stat. § 505/10a(c)), injunctive relief, and court costs and attorneys' fees as a result of Herff Jones' violations of the Illinois CFA.

## COUNT XI

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

## (On Behalf of Plaintiffs Ahn, Furcinito, and Blackwood and the New York Subclass)

379. Plaintiffs Ahn, Furcinito, and Blackwood ("New York Plaintiffs") restate and re-allege all preceding allegations above and hereafter as if fully set forth herein.

380. This Count is brought on behalf of New York Plaintiffs and the New York Subclass.

381. New York's General Business Law § 349 ("GBL § 349") prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

382.     In its provision of services throughout the State of New York, Herff Jones conducts business and trade within the meaning and intendment of New York's GBL § 349.

383.     New York Plaintiffs and the New York Subclass Members are consumers who conducted transactions with Herff Jones for their personal use.

384.     By the acts and conduct alleged herein, Herff Jones has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, the expectation that Herff Jones would implement adequate cybersecurity, when in fact Herff Jones did not.

385.     The foregoing deceptive acts and practices were directed at consumers.

386.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability and measures taken by Herff Jones to safeguard consumer PII, and to induce consumers to enter transactions with Herff Jones.

387.     By reason of this conduct, Herff Jones engaged in deceptive conduct in violation of GBL § 349.

388.     Herff Jones' actions are the direct, foreseeable, and proximate cause of the damages that New York Plaintiffs and the New York Subclass Members have sustained from having provided their PII to Herff Jones, which was exposed in the data breach.

389.     As a result of Herff Jones' violations, New York Plaintiffs and the New York Subclass Members have suffered damages because: (a) they would not have provided their PII to Herff Jones had they known Herff Jones did not use "reasonable security measures, including physical, administrative, and technical safeguards to help us protect your information from unauthorized access, use and disclosure"; (b) they have suffered identity theft and/or fraudulent charges and their PII has been devalued as a result of being exposed in the data breach; and (c) New York Plaintiffs and the New York Subclass Members must spend considerable time and

expenses dealing with the effects of the data breach, and are now at greater risk for future harm stemming from the data breach.

390.     On behalf of themselves and other the New York Subclass Members, New York Plaintiffs seek to recover their actual damages or fifty dollars ($50), whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT XII**

**VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT ("IDCSA"),
IND. CODE §§ 24-5-0.5-1, *ET SEQ.***

**(On behalf of Plaintiffs and the Nationwide Class; or, alternatively,
Plaintiff Kevin Bersch and the Indiana Subclass)**

391.     Plaintiffs restate and re-allege all preceding allegations above and hereafter as if fully set forth herein.

392.     This Count is brought by all Plaintiffs on behalf of the Nationwide Class, or, in the alternative, by Plaintiff Bersch and the Indiana Subclass.

393.     Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3(a) ("IDCSA") prohibits suppliers from engaging in deceptive, unfair, and abusive acts or omissions in consumer transactions.

394.     Herff Jones is a "supplier" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions," in violation of the IDCSA.  As a regular part of its business, Herff Jones sells and rents products related to school graduation.  It accepts payments from customers, like Plaintiffs, online through herffjones.com and in person, including via debit and credit card for Herff Jones' products.  Plaintiffs' and the Class Members' transactions were directed towards Indiana, and on information and belief, those transactions were process in Indiana and the information resulting from those transactions was stored in Indiana.

395.     In connection with its consumer transactions, Herff Jones engaged in unfair, abusive or deceptive acts, omissions or practices by, *inter alia*, engaging in the following conduct:

a.   failing to maintain sufficient security to keep sensitive PII of Plaintiffs and the Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, from being hacked and stolen;

b.   misrepresenting material facts to Plaintiffs and the Nationwide Class, or alternatively Plaintiff Bersch and the Indiana Subclass Members, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard their PII from unauthorized disclosure, release, data breaches, and theft, including but not limited to by promising in its Privacy Policy that it "implemented administrative, technical, and physical security measures to protect against the loss, misuse and/or alteration of your information[;]" [28];

c.   misrepresenting material facts to Plaintiffs and the Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, in connection with the sale of goods and services, by representing that Herff Jones did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of their PII, such requirements included, but are not limited to, those imposed by laws such as the Federal Trade Commission Act (15 U.S.C. § 45) and Indiana's data breach statute (Ind. Code § 24-4.9-3.5); and

d.   failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff Bersch's and the Indiana Subclass

---

[28] *See* https://www.herffjones.com/about/privacy/#CA ("How we use your information.") (last visited May 21, 2021).

Members' PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

396.    Herff Jones knew that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiffs and Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, and that risk of a data breach or theft was highly likely.  Nevertheless, it did nothing to warn them about its data insecurities, and instead affirmatively promised that it would maintain adequate security.  This was a deliberate effort to mislead customers, such as Plaintiffs and Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, in order to encourage them to use credit and debit cards to make purchases or secure rentals even while Herff Jones knew that its customers' sensitive PII was vulnerable

397.    The above unfair and deceptive practices and acts by Herff Jones were done a part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under the IDCSA.

398.    As a direct and proximate result of Herff Jones' deceptive trade practices, Plaintiffs and the Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their financial and personal information and damages.

399.    As a direct and proximate result of Herff Jones' deceptive trade practices, Plaintiffs and the Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, are now likely to suffer identity theft crimes, and they face a lifetime risk of identity theft crimes.

400.     Plaintiffs and the Nationwide Class Members, or alternatively Plaintiff Bersch and the Indiana Subclass Members, seek relief under Ind. Code § 24-5-0.5-4, including, but not limited to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## COUNT XIII

### VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT, WIS. STAT. §§ 100.18, *ET SEQ.* ("WDPTA")

**(On Behalf of Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass)**

401.     Plaintiffs Barnicle and Pawelczyk reallege and incorporate all previous allegations as though fully set forth herein.

402.     This Count is brought on behalf of Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass.

403.     The WDPTA, §100.18(1) states, in relevant part that no

> "firm, corporation or association, . . . with intent to sell, distribute, increase the consumption of . . . any . . . merchandise, . . . service, or anything offered by such person, firm, corporation or association, . . . directly or indirectly, to the public for sale, . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such . . . sale . . . of such . . . merchandise, . . . [or] service, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading."

*Id*.

404.     By reason of the conduct alleged herein, and by failing to provide reasonable security measures for the protection of the PII of Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members, Herff Jones violated the provisions of § 100.18 of the WDTPA.

405.    Herff Jones' conduct constitutes unfair or deceptive acts or practices, including, but not limited to, its omissions concerning customer privacy and that it does not utilize adequate data security measures to protect customers' sensitive PII.

406.    Herff Jones' untrue, deceptive, and misleading omissions concerning its data security materially induced Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members to pay more than they otherwise would have paid to Herff Jones had they known of is inadequate data security measures, and they caused Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members to suffer losses.

407.    Herff Jones had a duty to disclose to Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members that it did not adequately protect their sensitive PII, because the facts were material to Barnicle's, Pawelczyk's, and the Wisconsin Subclass Members' transactions; because Herff Jones was the party with knowledge of its data security shortcomings; because Herff Jones knew that Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members were entering transactions under a mistake as to the fact of its data security practices; because that fact was peculiarly and exclusively within Herff Jones' knowledge, and Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members could not reasonably be expected to discover it; and on account of the objective circumstances, Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members reasonably expected disclosure of the fact that Herff Jones did not protect sensitive PII.

408.    Due to the Data Breach, Plaintiffs and the Wisconsin Subclass Members have sustained fraud and lost property in the form of their PII and have otherwise suffered actual damages. Further, Herff Jones' failure to adopt reasonable practices in protecting and safeguarding the confidential and sensitive financial information of its customers has resulted in Plaintiffs

Barnicle and Pawelczyk and the Wisconsin Subclass Members spending time and money to protect against identity theft. Plaintiffs and the Wisconsin Subclass Members are now at a higher risk of identity theft crimes. This harm sufficiently outweighs any justifications or motives for Herff Jones' practice of collecting and storing confidential and sensitive financial information without the appropriate and reasonable safeguards to protect such information.

409.    As a result of Herff Jones' practices, Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members have suffered injury-in-fact and have lost money or property. As a result of Herff Jones' failure to adopt, implement, and maintain reasonable security procedures, and the resulting Data Breach, Plaintiffs and the Wisconsin Subclass Members have incurred costs and spent time associated with monitoring and repairing their credit and issues of identity theft.

410.    Herff Jones' conduct proximately caused the injuries to Plaintiffs Barnicle and Pawelczyk and the Wisconsin Subclass Members and they are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT XIV

## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT MO. STAT. § 407.020(1), ET SEQ. ("MMPA")

### (On Behalf of Plaintiff Windham and the Missouri Subclass)

411.    Plaintiff Windham realleges and incorporate all previous allegations as though fully set forth herein.

412.    This Count is brought on behalf of Plaintiffs Barnicle and Pawelczyk and the Missouri Subclass.

413.    The MMPA provides:

> The act, … by any person of any deception, fraud, false pretense, false promise,
> misrepresentation, unfair practice or the concealment, suppression, or omission of
> any material fact in connection with the sale or advertisement of any merchandise
> in trade or commerce . . . is defined to be an unlawful practice.

Mo. Stat. § 407.020.

414.    Plaintiff Windham, the Missouri Subclass Members, and Herff Jones are "persons"

as defined in Mo. Stat. § 407.020(1).

415.    Herff Jones advertised, offered, or sold goods or services in Missouri and engaged

in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo.

Stat. § 407.010(4), (6), and (7).

416.    Plaintiff Windham and the Missouri Subclass Members purchased or leased goods

or services primarily for personal, family, or household purposes.

417.    By reasons of the conduct alleged herein, and by failing to provide reasonable

security measure for the protection of PII of Plaintiff Windham and the Missouri Subclass

Members, Herff Jones violated the provisions of the MPPA, Mo. Stat. § 407.202.

418.    Herff Jones' actions as set forth above occurred in the conduct of trade or

commerce.

419.    Herff Jones engaged in unlawful, unfair, and deceptive accts and practices, in

connection with the sale or advertisement of merchandise in trade or commerce, in violation of

Mo. Stat. § 407.020(1), including by:

   a.   failing to maintain sufficient security to keep confidential and sensitive financial
        and personal information of Plaintiff Windham and the Missouri Subclass Members
        from being hacked and stolen;

   b.   misrepresenting or omitting material facts to the class, in connection with the sales
        of goods and providing services, by representing that Herff Jones would maintain

84

adequate data privacy and security practices and procedures to safeguard Plaintiff Windham's and the Missouri Subclass Member's PII from authorized disclosure, release, data breaches, and theft;

c.   misrepresenting or omitting material facts to the class, in connection with the sale of goods and providing services, by representing that Herff Jones did and would comply with the requirements of various federal and state laws pertaining to the privacy and security of Plaintiff Windham's and Missouri Subclass members' personal information;

d.   failing to prevent the Data Breach and promptly notify consumers thereof, failing to maintain the privacy and security of Plaintiff Windham and Missouri Subclass members' personal information, in violation of duties imposed by and public policies reflected in the applicable federal and state laws; and

e.   engaging in deceptive, unfair, and unlawful acts or practices by failing to disclose the Data Breach to Plaintiff Windham and Missouri Subclass members in a timely and accurate manner.

420.   Due to the Data Breach, Plaintiff Windham and the Missouri Subclass have lost property in the form of their PII and have suffered actual damages.  Further, Herff Jones' failure to adopt reasonable practices in protecting and safeguarding the confidential and sensitive PII of its customers has resulted in Plaintiff Windham and the Missouri Subclass spending time and money to protect against identify theft.  Plaintiff Windham and the Missouri Subclass members are now at a higher risk of identity theft crimes.  This harm sufficiently outweighs any justification or motives for Herff Jones' practice of collecting and storing confidential and sensitive PII without the appropriate and reasonable safeguards to protect such information.

421.    As a result of Herff Jones' practices and conduct, Plaintiff Windham and the Missouri Subclass Members have suffered injury-in-fact and have lost money or property.  As a result of Herff Jones' failure to adopt, implement, and maintain reasonable security procedures, and the resulting Data Breach, Plaintiff Windham and the Missouri Subclass Members have incurred costs and spent time associated with monitoring and repairing issues from the loss of PII and issues of identity theft.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

a.  An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein;

b.  Judgment in favor of Plaintiffs and the Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.  An order instructing Herff Jones to purchase or provide funds for credit monitoring services for Plaintiffs and all Class Members;

e.  An order requiring Herff Jones to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

f.   A judgment in favor of Plaintiffs and the Classes awarding them pre-judgment and

post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by

law, and

g.   An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED:  July 26, 2021                    Respectfully submitted,

*/s/ Kathleen A. DeLaney*
**DELANEY & DELANEY LLC**
Kathleen A. DeLaney #18604-49
3646 Washington Blvd.
Indianapolis, IN 46205
Phone: (317) 920-0400
Fax: (317) 920-0404
kathleen@delaneylaw.net

*Interim Liaison Counsel*

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner
Jeffrey D. Bores (*Pro Hac Vice*
*Forthcoming*)
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
Carl Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Phone: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
Phone: (312) 283-3814
gklinger@masonllp.com

*Interim Lead Counsel*

**SIRI & GLIMSTAD LLP**
Aaron Siri (*Pro Hac Vice forthcoming*)
Mason A. Barney (*Pro Hac Vice forthcoming*)
200 Park Avenue, Seventeenth Floor
New York, New York 10166
Tel: (212) 532-1091
E: aaron@sirillp.com
mbarney@sirillp.com

**GOLDENBERG SCHNEIDER, LPA**
Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8291
Fax: (513) 345-8294
E: jgoldenberg@gs-legal.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
E: tcoates@msdlegal.com

**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP**.
M. Anderson Berry
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
E: aberry@justice4you.com

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr. (*Pro Hac Vice Forthcoming*)
Sharon A. Harris (*Pro Hac Vice Forthcoming*)
Matthew C. De Re (*Pro Hac Vice Forthcoming*)
Jeffrey D. Blake (*Pro Hac Vice Forthcoming*)
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Tel: (312) 440-0020
Fax: (312) 440-4180
E: tom@attorneyzim.com
   sharon@attorneyzim.com
   matt@attorneyzim.com
   jeff@attorneyzim.com

**COHEN & MALAD, LLP**
Irwin B. Levin
Richard E. Shevitz
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
E: ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com

**AHDOOT & WOLFSON, PC**
Robert Ahdoot
2600 W. Olive Ave., Suite 500
Burbank, CA  91505
Tel: (310) 474-9111
Fax: (310) 474-8585
E: rahdoot@ahdootwolfson.com

**AHDOOT & WOLFSON, PC**
Andrew W. Ferich
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: (310) 474-9111
Fax: (310) 474-8585
E: aferich@ahdootwolfson.com

*Additional Plaintiffs' Counsel*