**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| _____ ) | |
| IN RE: HERFF JONES DATA ) | |
| BREACH LITIGATION ) | |
| ) | Master File No: 1:21-cv-1329-TWP-DLP |
| ) | |
| This Document Relates to: ) | |
| All Actions ) | |
| _____ ) | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ........................................................................................... iii

I.  INTRODUCTION .................................................................................................. 1

II. SUMMARY OF THE LITIGATION ..................................................................... 2

III. THE TERMS OF THE SETTLEMENT AGREEMENT ....................................... 3

    A. Settlement Class ............................................................................................. 3

    B. Settlement Benefits ........................................................................................ 4

        1. Monetary Relief ...................................................................................... 4

        2. Equitable Relief ...................................................................................... 6

    C. The Notice and Claims Process ..................................................................... 7

        1. Notice ...................................................................................................... 7

        2. Claims, Objections, and Requests for Exclusion ................................... 8

    D. Attorneys' Fees, Costs and Services Awards ................................................ 8

IV. ARGUMENT ......................................................................................................... 9

    A. Certification of the Settlement Class is Appropriate ...................................... 9

    B. The National Class and California Subclass Meet the Requirements of Rule 23(a) ..... 11

        1. The National Class and California Subclass are so numerous that joinder of all of them is impracticable ................................... 11

        2. Questions of law and fact are common to the members of the Classes ............ 11

        3. Plaintiffs' claims are typical of the claims of the members of the classes they represent ................................... 13

        4. The Adequacy Requirement is Satisfied ................................................ 13

        5. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied ................................... 14

            a. Questions of Fact and Law Predominate ................................... 15

i

       b.  A Class Action is the Superior Method of Resolving These Claims ........ 16

C.  Plaintiffs' Counsel Should Be Appointed Settlement Class Counsel ........................... 17

D.  The Settlement Should Be Finally Approved as Fair, Reasonable and Adequate ......... 18

    1.  The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class .................................................... 19

    2.  The Settlement was Negotiated at Arms-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion ...................................................... 21

    3.  The Settlement Provides Substantial Relief for the Classes ............................. 22

        a.  The costs, risks, and delay of trial and appeal favor final approval of the settlement.................................................................. 23

        b.  The means by which the relief will be distributed is fair, efficient, and effective ...................................................................... 24

        c.  The proposed award of attorney's fees is fair and reasonable ................. 25

    4.  The Settlement Agreement Treats Class Members Equitably Relative to Each Other ...................................................................................... 25

    5.  The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement.............. 26

V.  CONCLUSION ................................................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                      **<u>PAGE(S)</u>**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 9, 10, 15, 16

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ........................................................................... 18, 20

*Burrows v. Purchasing Power, LLC*,
    No. 1:12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ........................................ 10

*Catholic Healthcare W. v. U.S. Foodservice Inc.*,
    729 F.3d 108 (2d Cir.2013) ................................................................................... 15

*CV Reit, Inc. v. Levy*,
    144 F.R.D. 690 (S.D. Fla. 1992) ............................................................................ 14

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................................................. 21

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ................................................................................ 18

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ................................. 20

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................. 22

*Grady v. de Ville Motor Hotel, Inc.*,
    415 F.2d 449 (10th Cir. 1969) .............................................................................. 22

*Hall v. Bank of America, N.A.*,
    No. 1:12-cv-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ....................................... 27

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................................................... 24

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................................. 22

*Hapka v. CareCentrix, Inc.*,
    2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................................................ 16

*Hinman v. M and M Rental Center,*
   545 F. Supp. 2d 802 (N.D. Ill. 2008) .................................................................. 13

*In re Anthem, Inc. Data Breach Litig.,*
   327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ........................................................ 15

*In re AT & T Mobility Wireless Data Servs. Sales Litig.,*
   270 F.R.D. 330 (N.D. Ill. 2010) ................................................................... 18, 22

*In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.,*
   No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ................... 13

*In re Domestic Air Transp. Antitrust Litig.,*
   148 F.R.D. 297 (N.D. Ga. 1993) ....................................................................... 26

*In re Equifax, Inc. Customer Data Sec. Breach Litig.,*
   No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019) .............................................. 10

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
   293 F.R.D. 21 (D. Me. 2013) ............................................................................ 24

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 10, 16

*In re Mexico Money Transfer Litig.,*
   164 F.Supp. 2d 1002 (N.D. Ill. 2000) ............................................................... 27

*In re Northfield Labs., Inc. Sec. Litig.,*
   No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ................................ 18

*In re Target Corp. Customer Data Sec. Breach Litig.,*
   309 F.R.D. 482 (D. Minn. 2015) ....................................................................... 10

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .................................................... 16

*In re TikTok, Inc., Consumer Privacy Litigation,*
   MDL No. 3948, 2021 WL 4478403 (N.D. Ill. Sept. 30, 2021) ............................ 10

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.,*
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ................................ 19

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ........................................................................... 18

*Johnson v. Brennan,*
   No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ................................ 21

*Karpilovsky v. All Web Leads, Inc.*,
   No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ........................................... 11, 21

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ..................................................................................... 13

*Lipuma v. American Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................................................... 10

*Milliron v. T-Mobile USA, Inc.*,
   No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .......................................... 21

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ..................................................................................... 13

*Parker v. Risk Mgmt. Alternatives, Inc.*,
   206 F.R.D. 211 (N.D. Ill. 2002) ................................................................................. 12

*Retired Chi. Police Ass'n v. City of Chi.*,
   7 F.3d 584 (7th Cir. 1993) ......................................................................................... 14

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ....................................................................................... 15

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ....................................... 21

*Savanna Group, Inc. v. Trynex, Inc.*,
   2013 WL 66181 (N.D. Ill. 2013) ................................................................................ 11

*Spates v. Roadrunner Transp Sys., Inc.*,
   2016 WL 7426134 (N.D. Ill. 2016) ............................................................................ 13

*Steele v. GE Money Bank*, No. 1:08-CIV-1880,
   2011 WL 13266350 (N.D. Ill. May 17, 2011), report and recommendation adopted,
   No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ............................ 21

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) (internal quotes and citations omitted)........................ 22

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)............................................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).......................................................................................... 12, 15

*Wright v. Nationstar Mortgage LLC*,
   No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)...................... 21, 22, 24

## STATUTES

California Consumer Privacy Act. ("CCPA"), Cal. Civ. Code §§ 1798.100 *et seq* (2018)............ 4

## OTHER AUTHORITIES

2 *McLaughlin on Class Actions*, § 6:7 (8th ed. 2011) .................................................. 21

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)..................................................... 18

4 *Newberg on Class Actions*, § 11:50 (4th ed. 2002)..................................................... 22

7AA C. Wright, A. Miller, & M. Kane,
  *Federal Practice and Procedure* § 1778, 123–124 (3d ed. 2005)........................................... 15

MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004) ........................................ 9

## RULES

Fed. R. Civ. P. 12(b)(6).................................................................................. 24

Fed. R. Civ. P. 23(a) .......................................................................... 9, 11, 13, 14

Fed. R. Civ. P. 23(a)(1)................................................................................... 11

Fed. R. Civ. P. 23(a)(2)................................................................................... 12

Fed. R. Civ. P. 23(a)(4)................................................................................... 13

Fed. R. Civ. P. 23(b) ................................................................................... 9, 14

Fed. R. Civ. P. 23(b)(3)............................................................................. passim

Fed. R. Civ. P. 23(e) .................................................................................. 2, 25

Fed. R. Civ. P. 23(e)(2)................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C)(ii)........................................................................... 24

Fed. R. Civ. P. 23(c)(2)(C)(iii).......................................................................... 25

Fed. R. Civ. P. 23(e)(2)(D)............................................................................... 25

Fed. R. Civ. P. 23(e)(3).............................................................................. 19, 25

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv)....................................................................... 17

Fed. R. Civ. P. 23(g)(1)(B)............................................................................... 17

On January 6, 2022, Plaintiffs Justin Ahn, Kevin Bersch, Leighton Blackwood, Miriam Barnicle, Elizabeth Furcinito, Crysta Garner, Angela Garett, Niculina Odagiu, Andrew Pawelczyk, Connie Quintana, Kristin Walker, and Keisha Windham ("Plaintiffs") moved for preliminary approval of the proposed class action settlement and for certification of the Settlement Class ("Prelim. Approval. Mot."). ECF No. 58. The Court preliminarily approved the settlement on January 7, 2022, finding that the terms of the proposed settlement were "fair, reasonable, and adequate" and that the Class should be given notice. ECF No. 62 ("Prelim. Approval Order").

Plaintiffs now move for final approval of the settlement and for certification of the Settlement Class. As set forth in the Declaration of Ryan Chumley Regarding Settlement Administration ("Chumley Declaration" or "Chumley Decl.") attached hereto as Exhibit 1, the Claims Administrator, Angeion Group, implemented an extensive Court-approved Notice Program with direct notice of settlement delivered by email to the valid email addresses in Defendant's possession, via U.S. first-class mail, and otherwise as stated herein.

## I.   **INTRODUCTION**

The present case arises out of a data security incident (the "Data Incident") that allegedly compromised the personal and private information of approximately one million of Defendant's consumers. Plaintiffs, individually and on behalf of the Settlement Class (as defined below), filed suit against Defendant Herff Jones, LLC ("Herff Jones" or "Defendant") after Defendant announced it was the victim of a cyberattack on its computer systems in May of 2021.

As discussed in detail in Plaintiffs' Memorandum In Support Of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 58), the settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. Through mediation and extensive negotiations, the Parties reached an agreement that provides for significant monetary

1

and equitable relief for the Settlement Class. The settlement includes a $4,350,000 settlement fund which will be distributed to Plaintiffs and members of the Settlement Class, as well as the implementation of certain data security enhancements designed to better protect consumer information going forward.

If approved, the settlement will resolve all claims arising out of the Data Incident and will provide Class Members with relief consistent with the claims asserted in this action. Accordingly, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an order granting final approval of the settlement and finally certifying the Settlement Class.

## II.    <u>SUMMARY OF THE LITIGATION</u>

Plaintiffs allege that, in 2021, Defendant was the target of a data security incident in which an unauthorized user gained access to Defendant's computer systems and which resulted in unauthorized access to personal information. Declaration of Gary M. Klinger attached to Plaintiff's Motion for Preliminary Approval of Class Action Settlement (ECF No. 58-1, "Klinger Decl."), ¶ 27. Specifically, Herff Jones discovered in May 2021 that the unauthorized access included placing a script, which was also unauthorized, which allegedly captured consumers' names, addresses, phone numbers, email addresses, payment card numbers, payment card security codes, and payment card months/years of expiration (collectively, "PII"). *Id.*

In the wake of the Data Incident, four class action lawsuits were filed in the United States District Court for the Southern District of Indiana (and a fifth was filed in the United States District Court for the Northern District of Illinois, which was ultimately dismissed voluntarily and then added to the consolidated action in the Southern District of Indiana). *Garret et al. v. Herff Jones LLC*, Case No. 1:21-cv-01329-TWP-DLP; *Quintana v. Herff Jones LLC*, Case No. 1:21-cv-01350-

TWP-DLP; *Ahn et al. v. Herff Jones, LLC*, Case No. 1:21-cv-01381-TWP-DLP; *Furcinto v. Herff Jones, LLC*, Case No. 1:21-cv-01661-TWP-DLP; Klinger Decl., ¶ 30. Collectively, these cases (as well as the fifth case) seek relief on behalf of more than 1 million individuals potentially impacted by the Data Incident, approximately 120,000 of which reside in California; the Plaintiffs in these cases bring similar causes of action based on the same Data Incident. *Id.*, ¶ 28.

Recognizing the risks of protracted litigation, and after exchanging considerable discovery and engaging in mediation with an experienced mediator, the Hon. Wayne Andersen (Ret.) of JAMS, the Parties eventually reached an agreement on a settlement (the "Settlement") in principle pursuant to a mediator's proposal made by Judge Andersen. *Id.*, ¶ 33. The mediation proceeded via ZOOM Video Conference on October 19, 2021. *Id.*

Settlement negotiations continued with Judge Andersen's oversight. *Id.*, ¶ 34. On October 20, 2021, Judge Andersen submitted a mediator's proposal to the Parties, allowing them to respond by October 27, 2021. *Id.* On November 5, 2021, the Parties, having reached an agreement on the central terms of settlement, filed a Notice of Settlement with the Court. *Id.* Over the next few weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement and notice forms, and came to an agreement on a claims process and administrator. *Id.* The Settlement Agreement was finalized and signed by the Parties in January 2022. *Id.*

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  Settlement Class

The settlement provides for a nationwide Settlement Class as well as a California Settlement Class, as described in the operative complaint:

> **The Settlement Class.** All persons residing in the United States whose payment card numbers were exposed or potentially exposed in connection with the data incident that Herff Jones first announced on or around May 12, 2021, wherein said information that was contained in or on the Herff Jones computer system during

3

the August 1, 2020 through April 30, 2021 time frame may have been accessed, stolen, exposed or compromised by or to unauthorized parties, including all persons who were mailed a notification by or on behalf of Herff Jones between or around the period of May 12, 2021 to June 18, 2021 regarding the data incident.

**The California Settlement Subclass.** All persons residing in the State of California whose payment card numbers were exposed or potentially exposed in connection with the data incident that Herff Jones first announced on or around May 12, 2021, wherein said information that was contained in or on the Herff Jones computer system during the August 1, 2020 through April 30, 2021 time frame may have been accessed, stolen, disclosed, exposed or compromised by or to unauthorized parties, including all persons who were mailed a notification by or on behalf of Herff Jones between or around the period of May 12, 2021 to June 18, 2021 regarding the data incident.

*Id.,* ¶ 35. The Settlement Class and California Settlement Subclass specifically exclude any judge presiding over this matter and any members of their first-degree relatives, judicial staff, the officers and directors of Herff Jones, and Settlement Class Counsel. *Id.,* ¶ 36.

### B. <u>Settlement Benefits</u>

#### 1. **Monetary Relief**

The monetary relief provided by the Settlement Agreement consists of three separate tiers of compensation plus an additional cash benefit for members of the California Settlement Subclass, in recognition of statutory damages provided for under the California Consumer Privacy Act. *Id.*, ¶ 37.

*Under Tier 1*, any Settlement Class Member who attests that he or she used one or more of his or her debit or credit cards to purchase goods or services from Herff Jones during the Data Incident (August 1, 2020 to April 30, 2021) is eligible to receive Seventy-Five Dollars ($75.00), regardless of whether he or she experienced any fraudulent or unauthorized charges or whether he or she claims to have experienced any identity theft as a result of the Data Incident. *Id.*, ¶ 38.

*Under Tier 2*, any Settlement Class Member who (i) attests that he or she used one or more of his or her debit or credit cards to purchase goods or services from Herff Jones during the Data

Incident (August 1, 2020 to April 30, 2021); (ii) submits reasonable proof of a subsequent fraudulent charge on the same debit or credit card(s); (iii) attests that he or she spent at least some time addressing the fraudulent transactions or monitoring their accounts as a result of the Data Incident; and (iv) attests that the fraudulent charge(s) was more likely than not caused by the Data Incident, is eligible to receive a Tier 2 Award consisting of $25 per hour for up to 8 hours, for a maximum of $200.00. *Id.,* ¶ 39. Any Settlement Class Member who submits a claim for a Tier 2 Award and that claim is not approved or the portion of the claim that is approved is less than the amount the Settlement Class Member would otherwise receive as a Tier 1 Award will instead receive a Tier 1 Award. *Id.*

*Under Tier 3*, Herff Jones shall reimburse each Settlement Class Member in the amount of the Person's proven loss, but not to exceed $5,000 per claim, for a monetary out-of-pocket loss incurred as a result of the Data Incident if: (a) it is an actual, documented, and unreimbursed monetary loss; (b) was more likely than not caused by the Data Incident; (c) occurred during the Claims Period, through and including the end of the Claims Deadline; and (d) the claimant made reasonable efforts to avoid, or seek reimbursement for, the loss. *Id.,* ¶ 40. Tier 3 losses may include, but are not limited to: unreimbursed fraudulent charges, bank fees, replacement card fees, late fees from transactions with third parties that were delayed due to fraud or card replacements, credit freeze fees, parking expenses or other transportation expenses for trips to a financial institution to address fraudulent charges or receive a replacement payment card, credit monitoring purchased for up to three years, or other expenses reasonably attributable to the Data Incident. *Id.*

In addition to the above benefits, California Settlement Subclass Members are also eligible for an additional benefit of $100 per California Settlement Subclass Member ("California Claim(s)"). *Id.,* ¶ 41. To redeem this $100 benefit, California Settlement Subclass Members must

only submit a Settlement Claim and attest that they were a California resident at the time of the Data Incident(s) about which they were notified by Defendant. *Id.*

If, after all Tier payments and California Claim payments, along with all attorneys' fees, costs, administration expenses, and Service Awards, any residue of the Settlement Fund remains, all remaining funds will be distributed on a *pro rata* basis to all Settlement Class Members who submit a claim under Tier 1 (capped at an amount of $200 per claimant), Tier 2 (capped at an amount no greater than $50 per hour, or up to $400 per claimant), Tier 3 (capped at an amount of $10,000 per claimant), or as a California Subclass Member (capped at an amount of $200 per claimant). *Id., ¶* 42. Any remaining funds after that distribution will be paid to a *cy pres* recipient to be agreed upon by the parties (and subject to court approval). *Id.* In the event Class Member payments, attorneys' fees, class representative Service Awards, and settlement administration exceed the Settlement Fund, class member payments will be reduced on a *pro rata* basis such that Defendant's maximum amount to be paid does not exceed the non-reversionary Settlement Fund. *Id.*

### 2. Equitable Relief

In addition to the monetary relief provided, Herff Jones has also committed to providing equitable relief in the form of data security enhancements and changes to business practices. *Id., ¶* 43. For example, Herff Jones shall further develop, implement, and maintain a comprehensive information security program that is reasonably designed to protect the security, integrity, and confidentiality of Personal Information that Herff Jones collects or obtains from Consumers (collectively, the "ISP"). *Id.* The Herff Jones ISP shall be written and shall contain administrative, technical, and physical safeguards appropriate to: (i) the size and complexity of Herff Jones' operations; (ii) the nature and scope of Herff Jones' activities; and (iii) the sensitivity of the Personal Information that Herff Jones maintains. *Id.* Herff Jones may satisfy the requirement to

implement and maintain the ISP through review, maintenance, and, as necessary, updating of an existing information security program or existing safeguards to ensure that the ISP is operating in a manner reasonably calculated to prevent unauthorized access to or unauthorized use of Personal Information; and upgrading information safeguards as necessary to limit risks. *Id.*

### C. **The Notice and Claims Process**

#### 1. **Notice**

On January 12, 2022 the Court appointed Angeion Group, LLC ("Angeion") as the Claims Administrator. ECF No. 62. Angeion has complied and will continue to comply with the notice provision proposed and the system of notice, which was approved and has been implemented.

The Notice Program includes providing notice to the Settlement Class via direct mail and email to the members of the Settlement Class's addresses and email addresses (which were in the Defendant's possession). Decl. of Ryan Chumley of Angeion Group, LLC Regarding Settlement Administration ("Angeion Decl."), at ¶¶ 5-13. The Parties agreed to use Angeion Group as both the Notice Specialist and Claims Administrator in this case.  *Id.,* ¶ 2.

The Notice Program was highly successful and has reached approximately 97% of the Class via direct mail and email notice.   Angeion Decl., at ¶¶ 7-15. In addition, Angeion sent out a Reminder Email Notice to the Settlement Class.  *Id.*

The Claims Administrator also established a dedicated settlement website ("Settlement Website") and will maintain and update the website throughout the claim period, with the forms of Summary Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, copies of the motion for final approval of the Class Settlement Agreement, and the motion for Attorneys' Fees and Expenses Award and Service Award. *Id.,* ¶ 16. The Claims Administrator has also maintained a toll-free help line with an interactive voice response, FAQs,

and an option to speak to a live operator to provide Settlement Class Members with additional information about the Settlement. *Id.,* ¶ 18.

### 2. Claims, Objections, and Requests for Exclusion

The Notice Program advised Settlement Class members of their rights to object or opt out of the settlement and directed Settlement Class members to the Settlement Website for more information. The Long Form Notice provided instructions for Settlement Class members to exclude themselves from the Settlement Class. The Long Form Notice also provided instructions for Settlement Class Members to object to the settlement and/or to Settlement Class Counsel's application for attorneys' fees, costs and expenses. The claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and then decide whether they would like to opt out or object.

The exclusion and objection deadline was April 12, 2022. *Id.*, ¶ 21. To date, not a single objection has been filed and there have been only 3 requests for exclusion. *Id.*, ¶ 20. The claims deadline is not until May 12, 2022. At least one month prior to the Final Fairness Hearing (June 18, 2022), Plaintiffs will submit a supplemental brief to the Court that reports on the claim statistics.

### D. Attorneys' Fees, Costs and Services Awards

The Settlement Agreement calls for a reasonable service award to each Representative Plaintiff in the amount of $2,500 per Plaintiff. Klinger Decl., at ¶ 53. The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, producing documents in conjunction with the mediation, remaining available for consultation throughout the

mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. *Id.*, ¶¶ 53, 56.

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiff negotiated their fees and costs separate from the benefit to Class Members, in the amount not to exceed $1,522,500 for fees and costs combined. *Id.*, ¶ 54. The requested fees and costs represent 35% of the combined total of the Settlement Fund, *not including* the cost of the equitable relief provided by the Settlement. *Id.*

Class Counsel previously submitted a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards on February 28, 2022 (*see* ECF No. 66), which was prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.*, ¶ 55.

## IV.   ARGUMENT

### A.   Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class for settlement purposes in its Preliminary Approval Order finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b) for purposes of settlement. *See* ECF No. 58; Fed. R. Civ. P. 23(a)(1)-(4), (b)(3); MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Since that time, there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiff's Preliminary Approval Motion, the Settlement Class should now be finally certified for settlement purposes.

Where (as in this case) final certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re TikTok, Inc., Consumer Privacy Litigation*, MDL No. 3948, 2021 WL 4478403, *5 (N.D. Ill. Sept. 30, 2021) (slip copy) (internal citations omitted).

Because a court evaluating certification of a settled class action is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* "[A] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Courts regularly certify class actions for settlement. In fact, courts have certified similar data breach cases—on a national basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019).  *See, also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc.*

*Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). The Court should similarly certify the Settlement Class as it meets all of the Rule 23(a) and (b)(3) prerequisites needed for settlement, and for the reasons set forth below, certification is appropriate.

### B.  <u>The National Class and California Subclass Meet the Requirements of Rule 23(a)</u>

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.  The National Class and California Subclass are so numerous that joinder of all of them is impracticable

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "A class of forty generally satisfies the numerosity requirement."  *See Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181, *4 (N.D. Ill. 2013). Here, there are approximately 1,000,000 Settlement Class Members and thousands of California Subclass Members.  Joinder, therefore, is clearly impracticable, and the Settlement Class thus easily satisfies Rule 23's numerosity requirement.  *See, e.g., Karpilovsky v. All Web Leads, Inc.,* No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (class of 40 or more is sufficient); *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (same).

### 2.  Questions of law and fact are common to the members of the Classes

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

Here, commonality is readily satisfied because the circumstances of each particular class member retain a common core of factual or legal issues with the rest of the class, regardless of whether the individual is a member of the Settlement Class or both the Settlement Class and the California Settlement Subclass. Plaintiffs' claims center on whether Defendants failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. For example, issues common to all class and subclass members include:

- Whether Defendants owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding their PII;

- Whether Defendants knew or should have known that they may not have employed reasonable measures to keep the PII of Plaintiffs and Settlement Class Members secure; and

- Whether Defendants allegedly violated the law by failing to promptly notify Plaintiffs and members of the Classes that their PII had been compromised.

These common questions, and others alleged by Plaintiffs in their operative complaint, are central to the causes of action brought here and can be addressed on a class-wide basis, because they all tie back to the same common nucleus of operative fact—the Data Incidents and Defendants' data protection measures. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D.

211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"); *see also In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"). Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. Plaintiffs' claims are typical of the claims of the members of the classes they represent

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transp. Sys., Inc.*, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Breach. They are also based on the same legal theory, *i.e.*, that Defendants had a legal duty to protect Plaintiffs' and Settlement Class Members' PII. Because there is a "sufficient nexus" between the Plaintiffs' claims and the claims of Settlement Class Members, the typicality requirement is satisfied.

### 4. The Adequacy Requirement is Satisfied

The test for evaluating adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc. Consumer Privacy Litig.*, 2021 WL 4478403, *7 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Here, the Class Representatives and Settlement Class Counsel meet the test of adequacy.

First, there is no conflict between Plaintiffs and the Settlement Class Members. Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. Plaintiffs were harmed in the same way as all Settlement Class Members when Defendants failed to adequately secure their PII. Plaintiffs and all Settlement Class and California Settlement Subclass Members seek relief for injuries arising out of the same Data Incident. In light of this common event and injury, the named Plaintiffs have every incentive to vigorously pursue the class claims and have prosecuted this case for the benefit of all Settlement Class Members.

Further, Settlement Class Counsel are qualified to represent the class. They have extensive experience in data privacy and consumer class actions. *See* Klinger Decl., ¶¶ 4-25. Contemporaneously with this filing, Settlement Class Counsel have submitted declarations demonstrating their skills and experience. *See also* ECF No. 58. The results obtained by this settlement confirm counsel's adequacy.

### 5.  The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate

14

over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Questions of Fact and Law Predominate

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc*., 729 F.3d 108, 118 (2d Cir.2013)) (internal quotation marks omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, 123–124 (3d ed. 2005)).

In this case, the key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class, and whether Defendants breached that duty. The common questions that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed],

first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

### b. A Class Action is the Superior Method of Resolving These Claims

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of a million claims in one action is far superior to litigation via individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P.

23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incidents.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Court should finally certify the Settlement Class for settlement purposes.

### C. Plaintiffs' Counsel Should Be Appointed Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed herein, and as fully explained in Mr. Klinger's Declaration, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. *Id*., ¶¶ 4-25. The proposed Settlement Class Counsel have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the settlement of this matter to

the benefit of Plaintiffs and the Settlement Class. *Id.*, ¶¶ 26-57. Accordingly, Plaintiffs request

that the Court appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC,

Bryan L. Bleichner of Chestnut Cambronne PA, and Carl Malmstrom of Wolf Haldenstein Adler

Freeman & Herz LLC as Settlement Class Counsel.

    D.  **The Settlement Should Be Finally Approved as Fair, Reasonable and Adequate**

As the Seventh Circuit has recognized, federal courts strongly favor and encourage

settlements, particularly in class actions and other complex matters, where the inherent costs,

delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class

could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary
> resolution of litigation through settlement. In the class action context in particular,
> there is an overriding public interest in favor of settlement. Settlement of the
> complex disputes often involved in class actions minimizes the litigation expenses
> of both parties and also reduces the strain such litigation imposes upon already
> scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980)

(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873

(7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally

favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)

(citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be

approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless

Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action

settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL

366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT & T Mobility Wireless Data Services Sales

Lit'n*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314)). "First, the court holds a

preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

On October 27, 2021, this Court preliminarily found the settlement to be fair, adequate, and reasonable. ECF No. 62. This Court ordered that the notice process commence and set a final fairness hearing for July 18, 2022. *Id*.

Where, as here, the proposed settlement would bind class members, it may only be finally approved after the fairness hearing and a finding that the settlement is fair, reasonable, and adequate, based on the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As explained below, consideration of the relevant factors supports finally approving the settlement.

### 1.   The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise.  Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer*

19

*Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. *See* Klinger Decl., ¶ 24. At the outset of their investigation, Settlement Class Counsel conducted extensive research regarding the Plaintiffs' claims, Defendants, and the Data Incidents. *Id.,* ¶ 26-29. The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Wayne Andersen. *Id.*, ¶ 33-34.  Even after reaching an agreement on the central terms, the Parties spent months fully negotiating the finer points of the Settlement Agreement. *Id.*, ¶ 34.  As such, and considering counsel's extensive experience in data breach litigation (*see, e.g.,* Klinger Decl., ¶¶ 4-25), the Parties were able to enter into settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class.  *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009).  Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Settlement Class Members.  They thus have every incentive to vigorously pursue the claims of the class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process.  Further, Plaintiffs retained qualified and competent counsel with

extensive experience in litigating consumer class actions, and privacy actions in particular.  *See, e.g., Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

### 2. The Settlement was Negotiated at Arms-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions*, § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank,* No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), report and recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class, preventing potential collusion"); *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[1]

Here, the settlement resulted from good faith, arms'-length settlement  negotiations over many months, including a mediation session with respected mediator Wayne Andersen.  Klinger Decl., ¶¶ 33-34.  At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.  After the conclusion of mediation, the Parties reached an agreement on the central terms and spent weeks finalizing all settlement terms and documents. *Id.*, ¶ 34.

---

[1] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Accordingly, it is clear that the Parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See, e.g., Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright*, 2016 WL 4505169, at * 11 (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery).  Thus, this factor weighs in favor of preliminary approval.

### 3.  The Settlement Provides Substantial Relief for the Classes

The settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted).  Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs."  *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. at 347.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969).  It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A*., 316 F.R.D. 215,

228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the settlement provides for both automatic and claims-made monetary relief, as well as equitable relief in the form of specific data security enhancements designed to better protect Settlement Class Members' PII. Klinger Decl. at ¶ 43. The Settlement provides for a non-reversionary Settlement Fund of $4,350,000 for Plaintiffs and Settlement Class Members to receive compensation through one of three separate tiers, depending on the affect the Data Incident had on each individual class member, as well as an extra statutory based benefit for California Settlement Subclass Members. Settlement Class Members can elect to receive: (1) $75 regardless of whether they experienced fraud or not; (2) $25 per hour for lost time where there is documented fraud (up to $200); or (3) up to $5,000 for documented out of pocket losses. California Settlement Subclass Members can claim an additional $100. *Id.*, ¶ 35-42. Additionally, the Settlement Agreement provides for significant equitable relief in the form of Data Security enhancements designed to better protect class member information in the future. *Id.*

Members of the California Settlement Subclass can make an additional monetary claim for $100, simply by attesting that they were residing in the State of California when Defendants notified them of the Data Incident. *Id.*

The settlement benefits are therefore fair, adequate, and reasonable compared to the range of possible recovery.

### a. The costs, risks, and delay of trial and appeal favor final approval of the settlement

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their

case, they also understand that Defendant would assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and class members can have a chance at relief.

Plaintiffs dispute the defenses Defendant are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

### b. The means by which the relief will be distributed is fair, efficient, and effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should

24

deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes a high standard in class member relief: cash payments *and* equitable relief. Cash Awards will be distributed based upon information provided by claimants on their respective claim forms. Class Members have the opportunity to receive some compensation with a simple attestation, and greater compensation by providing documentary evidence. *Id.* For these reasons, the means by which the relief will be distributed is fair, efficient, and effective.

### c. The proposed award of attorney's fees is fair and reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of attorneys' fees and costs in the amount of $1,522,500 — a small fraction of the value of the total settlement. In fact, the fees and costs requested are approximately 35 percent of the $4.35 million conservative valuation of the settlement. See Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and Service Awards to Representative Plaintiffs, filed concurrently herewith. This amount falls well below other approved class settlements, including privacy class settlements.

### 4. The Settlement Agreement Treats Class Members Equitably Relative to Each Other

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to make a claim for up to $10,000 in reimbursements for Out-of-Pocket Losses and can

25

also claim up to 8 hours of Lost-Time Losses. *Id.*, ¶¶ 42, 39.  While members of the California

Settlement Subclass can recover $100 (subject to pro ration), such a recovery is warranted, as

California Settlement Subclass Members have additional and valuable California state claims that

they would be able to recover for, should the case move forward through trial. *Id.* ¶¶ 41.

Direct Notice was sent to nearly all Settlement Class Members, and all Settlement Class

Members have the opportunity to object to or exclude themselves from the settlement. Decl. of

Angeion at ¶ 5-21. And, while Plaintiffs will each be seeking a $2,500 award for their services on

behalf of the class, this award is significantly less than the amount that any given Settlement Class

Member can claim in reimbursements, and thus does not create an improper motivation to settle

or give rise to undue inequities across the class.

### 5. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement

The Court should also give great weight to the recommendations of counsel for the parties,

given their considerable experience in this type of litigation. *See In re Domestic Air Transp.*

*Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a

proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced

counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its

own judgment for that of counsel.'") (citations omitted).

Here, Settlement Class Counsel have substantial experience prosecuting large, complex

consumer class actions. Klinger Decl., ¶¶ 4-25. After informal discovery, independent factual

investigation and mediation before a well-qualified and experienced mediator, Settlement Class

Counsel are confident that the settlement provides significant relief to the Settlement Class and is

in their best interests. *Id.*, ¶ 25-34. Settlement Class Counsel whole-heartedly endorse the

settlement. Additionally, the reaction of the Settlement Class has been overwhelmingly positive.

To date, **there are no objections**, only 5 opt outs, and more than 57,742 Claim Forms have been filed. Angeion Decl. at ¶ 19.  This is "strong circumstantial evidence" that the settlement is fair, reasonable, and adequate and deserves final approval. *In re Mexico Money Transfer Litig.,* 164 F.Supp. 2d 1002, 1021 (N.D. Ill. 2000); *see also Hall v. Bank of America, N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness").

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval to the settlement and certify the Settlement Class.


Dated:  April 29, 2022                     Respectfully Submitted,


                                           */s/ Gary M. Klinger*
                                           Gary M. Klinger
                                           **MILBERG COLEMAN BRYSON PHILLIPS
                                           GROSSMAN, PLLC**
                                           227 W. Monroe Street
                                           Suite 2100
                                           Chicago, IL 60606
                                           Phone: (866) 252-0878
                                           Email: gklinger@milberg.com

                                           Bryan L. Bleichner
                                           **CHESTNUT CAMBRONNE PA**
                                           100 Washington Avenue South
                                           Suite 1700
                                           Minneapolis, MN  55401-2138
                                           Email:  bbleichner@chestnutcambronne.com

Carl Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 West Jackson Boulevard, Suite 1700
Chicago, IL 60604-3597
Email: malmstrom@whafh.com

*Interim Class Counsel for Plaintiffs and the Putative Class*

Kathleen A. Delaney #18604-49
**DELANEY & DELANEY LLC**
3646 Washington Blvd.
Indianapolis, IN 46205
Phone: (317) 920-0400
Fax: (317) 920-0404
kdelaney@delaneylaw.net

*Interim Liaison Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 29, 2022, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger

28